# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

MILTON RUDI,

               Plaintiff,

   vs.

LESLIE WEXNER, et al.,

               Defendants,

   and

L BRANDS, INC.,

               Nominal Defendant.

Case No. 2:20-cv-3068

Judge Michael H. Watson

Magistrate Judge Elizabeth P. Deavers

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement (the "Stipulation")[1] is made and entered into by and among the following, each by and through his, her, or its undersigned attorneys: (1) the Oregon Department of Justice, as chief legal advisor to the Oregon State Treasurer, on behalf of the Oregon Public Employee Retirement Fund ("Oregon"); (2) Milton Rudi ("Rudi"); (3) Detroit Police and Fire Retirement System ("Detroit"); (4) Nancy A. Lambrecht, Co-Trustee of the Amanda Greenfield 2012 Irrevocable Trust ("Lambrecht"); (5) John Giarratano ("Giarratano"); and (6) Maryann Kualii ("Kualii") (collectively with Oregon, Rudi, Detroit, Lambrecht, and Giarratano, the "Settling Shareholders"); (7) current and former members of the Board of Directors of L Brands, Inc. (the "Board"):  Leslie H. Wexner, Abigail S. Wexner, Allan R. Tessler, Gordon Gee,

---

[1]    All capitalized terms shall have the meanings set forth herein.

Raymond Zimmerman, Patricia S. Bellinger, Donna A. James, Michael G. Morris, Sarah E. Nash, Robert H. Schottenstein, Anne Sheehan, Stephen D. Steinour, David T. Kollat, and Dennis S. Hersch (collectively, the "Board Members"); (8) former officers of L Brands, Inc.: Leslie H. Wexner and Edward Razek (the "Officers," and, together with the Board Members, the "Individual Defendants"); (9) nominal defendant L Brands, Inc. ("L Brands" or the "Company," and, together with the Individual Defendants, the "Defendants"); and (10) the Special Committee of the L Brands Board (the "Special Committee"). Settling Shareholders, Defendants, and the Special Committee are collectively referred to herein as the "Parties."

This Stipulation is intended by the Parties to fully, finally, and forever compromise, resolve, discharge, release, and settle the Released Claims (as defined herein), upon the terms and subject to the conditions set forth herein.

## I.    DEFINITIONS

As used in this Stipulation, in addition to the capitalized terms defined elsewhere herein, the following terms have the meanings specified below:

(a)    "220 Action" refers to the case captioned *John Giarratano* v. *L Brands, Inc.*, Case No. 2020-0437-JRS (Del. Ch.), which was commenced on June 4, 2020.

(b)    "Actions" refer collectively to the Litigations and the Demands.

(c)    "Bath & Body Works" means Bath & Body Works, Inc., to which L Brands will change its name in connection with the planned August 2, 2021 distribution of Victoria's Secret & Co. ("Victoria's Secret") common stock to L Brands stockholders and the separation of Victoria's Secret into an independent, publicly traded company.

(d)    "Court" means the United States District Court for the Southern District of Ohio.

(e)     "Current Company Stockholders" means any Person who owned L Brands common stock as of the date of the execution of this Stipulation and who continues to hold common stock either in Bath & Body Works or Victoria's Secret as of the date of the Settlement Hearing, excluding the Individual Defendants, the current officers and directors of L Brands, members of their immediate families, and their legal representatives, heirs, successors, or assigns, and any entity in which the Individual Defendants have or had a controlling interest.

(f)     "Delaware Action" means the action captioned as *Lambrecht* v. *Wexner, et al.*, C.A. No. 2021-0029-JTL (Del. Ch.).

(g)     "Demands" refers collectively to (1) the stockholder litigation demands made by Rudi (dated February 6, 2020; supplemented April 3, 2020); Lambrecht (dated July 10, 2020); and Detroit (dated February 23, 2021); (2) the books and records demands made by Oregon (dated February 7, 2020; supplemented February 25, 2020 and May 7, 2020); Giarratano (dated February 12, 2020); and Kualii (dated September 4, 2020); and (3) the 220 Action.

(h)     "Effective Date" means the date by which all of the events and conditions specified in Paragraph 6.1 herein have been met and have occurred.

(i)     "Fee and Expense Award" has the meaning ascribed to it in Paragraph 4.2 below.

(j)     "Final" means the time when a Judgment that has not been reversed, vacated, or modified in any way is no longer subject to appellate review, either because of disposition on appeal and conclusion of the appellate process (including potential writ proceedings) or because of passage of time for seeking appellate or writ review without action.  More specifically, it is that situation when (i) no appeal or petition for review by

3

writ has been filed and the time has passed for any notice of appeal or writ petition to be timely filed from the Judgment; or (ii) if an appeal has been filed, the court of appeal has either affirmed the Judgment or dismissed that appeal and the time for any reconsideration or further appellate review has passed; or (iii) a higher court has granted further appellate review and that court has either affirmed the underlying Judgment or affirmed the court of appeal's decision affirming the Judgment or dismissing the appeal or writ proceeding, and the time for any reconsideration or further appellate review has passed. For purposes of this paragraph, an "appeal" shall not include any appeal challenging the award of any Fee and Expense Award. Any proceeding or order, or any appeal or complaint for a writ of certiorari pertaining solely to any Fee and Expense Award, shall not in any way delay or preclude the Judgment from becoming Final. Any reference to the "Finality" of the Settlement shall incorporate the definition of Final in this paragraph.

(k)     "Judgment" means the final order and judgment to be rendered by the Court, substantially in the form of Exhibit D attached hereto.

(l)     "L Brands" means L Brands, Inc., which will be renamed Bath & Body Works, Inc. on August 2, 2021, in connection with the planned separation of Victoria's Secret. For the avoidance of doubt, L Brands and "the Company" as used herein refer to L Brands, Inc. and its successors Bath & Body Works and Victoria's Secret.

(m)     "L Brands Stockholder" means any Person who owned L Brands common stock prior to August 2, 2021 and/or who owns common stock in Bath & Body Works and/or Victoria's Secret following the planned August 2, 2021 separation of Victoria's Secret.

(n)     "Litigations" refers collectively to the Delaware Action and Ohio Action.

4

(o) "Management & Governance Measures" means the measures that form part of the Settlement, in the form of Exhibit E attached hereto.

(p) "Notice" means the Notice of Pendency and Proposed Settlement of Derivative Actions, substantially in the form of Exhibit B attached hereto.

(q) "Ohio Action" means *Rudi* v. *Wexner, et al.*, Case No. 2:20-cv-3068 (S.D. Ohio).

(r) "Person" or "Persons" means an individual, corporation, limited liability corporation, professional corporation, partnership, limited partnership, limited liability partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, or any other business or legal entity.

(s) "Plaintiff" means Plaintiff Milton Rudi.

(t) "Preliminary Approval Order" means the order to be entered by the Court, substantially in the form of Exhibit A attached hereto, including, among other things, preliminarily approving the terms and conditions of the Settlement as set forth in this Stipulation, directing that Notice be provided to Current Company Stockholders, and scheduling a Settlement Hearing to consider whether the Settlement and the Fee and Expense Award should be finally approved and whether the Judgment should be entered.

(u) "Related Persons" means past or present family members, spouses, heirs, trusts, trustees, executors, estates, administrators, beneficiaries, distributees, foundations, agents, employees, fiduciaries, partners, partnerships, general or limited partners or partnerships, joint ventures, member firms, limited liability companies, corporations, parents, subsidiaries, divisions, affiliates, associated entities, stockholders, principals, officers, directors, managing directors, members, managing members, managing agents,

5

representatives, predecessors, predecessors-in-interest, successors, successors-in-interest, assigns, financial or investment advisors, advisors, consultants, investment bankers, entities providing any fairness opinion, underwriters, brokers, dealers, lenders, commercial bankers, attorneys, personal or legal representatives, accountants, insurers, co-insurers, reinsurers, and associates.

(v)     "Released Claims" means collectively, the Released Defendant Claims and the Released Stockholder Claims.

(w)     "Released Defendant Claims" means any and all claims, rights, demands, obligations, controversies, debts, disputes, damages, losses, causes of action, issues, liabilities, and charges of any kind or nature whatsoever, whether in law or equity, including both known claims and Unknown Claims, suspected or unsuspected, accrued or unaccrued, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, whether arising under federal or state statutory or common law, or any other law, rule, or regulation, whether foreign or domestic, that Defendants have or could have asserted against the Released Stockholder Persons or their counsel, arising out of, relating to, based upon, or involving, directly or indirectly, the institution, prosecution, or settlement of the claims asserted against Defendants; provided, however, that the Released Defendant Claims shall not include (1) any claims relating to the enforcement of the Settlement or this Stipulation, (2) any claims by the Defendants relating to insurance coverage or the right to indemnification, or (3) any claims that arise out of or are based upon any conduct of the Released Stockholder Persons after the Effective Date.

(x)     "Released Defendant Persons" means, collectively, each and all of Individual Defendants, L Brands (which for the avoidance of doubt includes Bath & Body

Works and Victoria's Secret), and the Special Committee, and their respective attorneys, and each and all of their respective Related Persons.

(y)     "Released Persons" means, collectively, the Released Defendant Persons and the Released Stockholder Persons. "Released Person" means, individually, any of the Released Persons.

(z)     "Released Stockholder Claims" means any and all claims, rights, demands, obligations, controversies, debts, disputes, damages, losses, actions, causes of action, issues, liabilities, and charges of any kind or nature whatsoever, whether in law or equity, including both known claims and Unknown Claims, suspected or unsuspected, accrued or unaccrued, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, whether arising under federal or state statutory or common law, or any other law, rule, or regulation, whether foreign or domestic, that  (i) were asserted in any of the complaints filed in the Litigations or in the Demands in the Settling Matters, or (ii) could have been asserted by L Brands directly, by Settling Shareholders directly, or by Settling Shareholders or any other L Brands Stockholder derivatively on behalf of L Brands in any court, tribunal, forum, or proceeding, arising out of, relating to, based upon, or involving, directly or indirectly, any of the facts, allegations, practices, events, claims, disclosures, non-disclosures, occurrences, representations, statements, matters, transactions, conduct, actions, failures to act, omissions, or circumstances that were alleged or referred to in any of the complaints filed in the Litigations or in the Demands in the Settling Matters; provided, however, that the Released Stockholder Claims shall not include (1) any claims relating to the enforcement of the Settlement or this Stipulation, (2) any claims that arise out of or are based upon any conduct of the Released Defendant Persons after the Effective Date, or (3) any direct claims of any L Brands Stockholder

7

other than Settling Shareholders, including without limitation claims asserted under the federal securities laws.

(aa)    "Released Stockholder Persons" means each and all of the Settling Shareholders and their respective attorneys, and each and all of their respective Related Persons.

(bb)    "Settlement" means the settlement documented in this Stipulation and its Exhibit E.

(cc)    "Settlement Consideration" means the consideration provided to L Brands through the Settlement as set forth in Paragraphs 1.1 through 1.4 below and the attached Exhibit E.

(dd)    "Settlement Hearing" means a hearing to be held by the Court upon duly-given notice to review this Stipulation and its exhibits, as well as the application for the Fee and Expense Award, and determine whether the Settlement should be finally approved, whether the Fee and Expense Award should be finally approved, and whether the Judgment should be entered.

(ee)    "Settling Matters" refers collectively to the Litigations and Demands.

(ff)    "Settling Shareholders' Counsel" refers collectively to Bernstein Litowitz Berger & Grossmann LLP, Bernstein Liebhard LLP, Cohen Milstein Sellers & Toll PLLC, deLeeuw Law LLC, Greenfield & Goodman LLC, Quinn Emanuel Urquhart & Sullivan LLP, Scott+Scott Attorneys at Law LLP, Smith, Katzenstein & Jenkins LLP, and any other law firm that appeared for or represents any of the Settling Shareholders in the Settling Matters.

(gg)    "Special Committee" means the Special Committee formed by the L Brands Board on May 14, 2020 and delegated the full power and authority of the Board

to review, investigate, and evaluate the subject matter of the claims in the Settling Matters and take any action it deems reasonably necessary and in the best interests of the Company and its stockholders to address the Settling Matters and their subject matter, including any claims or litigation relating thereto.

(hh) "Summary Notice" means the Summary Notice of Pendency and Proposed Settlement of Derivative Actions, substantially in the form of Exhibit C attached hereto.

(ii) "Transaction" has the meaning ascribed to it in Paragraph 1.7 below.

(jj) "Unknown Claims" means any and all Released Claims that any of the Parties or any L Brands Stockholder does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, including claims which, if known by him, her, or it, might have affected his, her, or its decision to settle or the terms of his, her, or its settlement with and releases provided to the other Parties, or might have affected his, her, or its decision not to object to this Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, the Parties shall expressly waive, and, with respect to Released Stockholder Claims that could have been asserted derivatively on behalf of the Company, all other L Brands Stockholders by operation of the Judgment shall have expressly waived, the provisions, rights, and benefits of California Civil Code § 1542, or any other law of the United States or any state or territory of the United States, or principle of common law that is similar, comparable, or equivalent to Section 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

9

The Parties and each L Brands Stockholder may hereafter discover facts in addition to or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of the Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity, but the Parties and each other L Brands Stockholder derivatively on behalf of the Company shall expressly, fully, finally and forever settle and release, and upon the Effective Date and by operation of the Judgment shall have settled and released, fully, finally, and forever, any and all Released Claims as applicable without regard to the subsequent discovery or existence of such different or additional facts.  The Parties acknowledge, and the L Brands Stockholders shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of the Settlement of which this release is a part.

(kk)    "Victoria's Secret" means Victoria's Secret & Co., which is planned to be separated from L Brands as an independent, publicly traded company on August 2, 2021.

## II.    PROCEDURAL BACKGROUND

### A.    The Ohio Action

On May 19, 2020, Plaintiff Rudi filed a stockholder derivative action in the Court of Common Pleas of Franklin County, Ohio, asserting a claim for breach of fiduciary duty against certain of the Individual Defendants (*Rudi v. Wexner, et al.*, Case No. 20CV003259).  Prior to filing suit, Plaintiff Rudi had made a litigation demand on the Board (dated February 6, 2020; supplemented April 3, 2020).  On June 16, 2020, defendants removed the action to this Court.  On July 6, 2020, the parties to the action informed the Court that the L Brands Board had created a Special Committee of directors

that had been delegated the full power and authority of the Board to review, investigate, and evaluate the subject matter of litigation demands made by Plaintiff on the Board on February 12, 2020 and April 3, 2020 and to take any action it deems reasonably necessary and in the best interests of the Company and its stockholders to address those demands or their subject matter, including any claims or litigation relating to their subject matter.

In the July 6, 2020 filing, the parties to the action also agreed to stay the proceedings in light of the Special Committee's ongoing work.  On December 29, 2020, the parties to the action agreed to extend the stay of proceedings because the Special Committee's work was ongoing.  At a March 26, 2021 status conference, they informed the Court that the Parties had agreed to participate in a mediation session on April 21, 2021 with the Hon. Layn Phillips.  The Court extended the stay on March 26, 2021.  In a June 29, 2021 joint status report, the parties to the action informed the Court that the Parties had participated in a second mediation session with Judge Phillips on June 14, 2021, which had resulted in the Parties signing a term sheet setting forth the material terms of the Settlement (the "Term Sheet").  The Court extended the stay to August 30, 2021 so that the Parties could formalize the Settlement.

**B.     The Delaware Action**

On January 12, 2021, Lambrecht filed a stockholder derivative action in the Delaware Court of Chancery, asserting claims for breach of fiduciary duty and waste against the Individual Defendants (*Lambrecht v. Wexner, et al.*, C.A. No. 2021-0029-JTL).  Prior to filing suit, Lambrecht had made a litigation demand on the Board (dated July 10, 2020).

### C.     The Books and Records Requests and the 220 Action

On February 7, 2020, Oregon made a demand to inspect books and records pursuant to Section 220 of the Delaware General Corporation Law ("Section 220"). The demand sought to investigate alleged breaches of fiduciary duty by officers and directors of L Brands. Oregon made supplemental books and records demands on February 25, 2020 and May 7, 2020. The Company produced documents in response to Oregon's books and records requests.

On February 12, 2020, Giarratano served L Brands with a books and records demand pursuant to Section 220, seeking to investigate alleged breaches of fiduciary duty by officers and directors of L Brands. On June 4, 2020, Giarratano filed a Section 220 action in the Delaware Court of Chancery to obtain the requested books and records (*Giarratano v. L Brands, Inc.,* C.A. No. 2020-0437-JRS). One month before the scheduled trial date of November 23, 2020, the Company agreed to produce documents in response to Giarratano's books and records request. The action was voluntarily dismissed by stipulation on October 29, 2020.

### D.     The Detroit Police and Fire Litigation Demand

On February 23, 2021, Detroit made a litigation demand on the Board, via counsel for the Special Committee, making similar factual allegations as Plaintiff Rudi and requesting similar relief.

### E.     The Special Committee

On May 14, 2020, the Board formed the Special Committee and delegated it the full power and authority of the Board to review, investigate, and evaluate the subject matter of the Demands and to take any action it deems reasonably necessary and in the best interests of the Company and its stockholders, on behalf of the Board and the

12

Company, to address the Demands or their subject matter and any stockholder demands, claims, or litigation that may be asserted arising out of the Demands or relating to their subject matter.  The Special Committee was empowered to retain its own independent advisors and undertook over the course of many months a thorough and independent investigation of the allegations and claims asserted in the Demands and Litigations.  Following its investigation, the Special Committee determined that it would not be in the best interests of the Company or its stockholders to pursue litigation, but that those interests might well be served by attempting to resolve the claims in the Demands and Litigations through a global settlement.

### F.     The Meet and Confer Process and Extensive Settlement Negotiations

In advance of the proposed mediation, Settling Shareholders reviewed internal documents produced by L Brands.  These documents included, among other things, (1) minutes, agendas, board packages, and other materials relating to regularly conducted and special meetings of the Board and Board committees; (2) internal L Brands policies, including the Code of Conduct, investigation manuals, and policies and procedures; and (3) materials relating to the independence of the members of the Special Committee.  Settling Shareholders also conducted numerous meetings and phone calls with the Special Committee's counsel.  Settling Shareholders' Counsel pressed the Special Committee and Wachtell Lipton for detailed descriptions of the Special Committee's process and progress in its investigation, for production of relevant documents, and to explore possible paths to resolution.  Settling Shareholders' Counsel also shared investigation suggestions and results of Settling Shareholders' own independent investigations as to the alleged wrongdoing by Defendants.  To that end, several of the Settling Shareholders' Counsel

made detailed presentations to the Special Committee concerning their own investigations, investigative suggestions for the Special Committee, and potential reforms.

Settling Shareholders' Counsel have engaged in extensive settlement negotiations with Defendants, spanning many months. The settlement negotiations were mediated through the Hon. Layn R. Phillips (Ret.) of Phillips ADR. The Parties engaged in a full-day mediation on April 21, 2021. Judge Phillips presided, and the mediation session was held by Zoom.

While no final resolution was reached at that time, the Parties continued their dialogue, including through frequent working group sessions, with the ongoing assistance of the mediator. Over several sessions, the working group negotiated the detailed Management & Governance Measures that form part of the Settlement and are attached hereto as Exhibit E.

On June 14, 2021, the Parties engaged in another full-day mediation. After the Parties reached an agreement in principle, Settling Shareholders' Counsel negotiated a term sheet setting forth the material terms of the Settlement. Settling Shareholders have taken discovery consisting of interviewing one member of the Special Committee and representatives of counsel for the Special Committee, and reviewing relevant documents produced by the Special Committee. This discovery confirmed that the terms of the Settlement are fair and reasonable to L Brands and L Brands Stockholders and that it is in the best interests of the Company and its stockholders to enter into this Stipulation. The Parties have now reached a definitive agreement to settle the Litigations and Demands, upon the terms and conditions set forth in this Stipulation.

## III.    STOCKHOLDERS' CLAIMS AND THE BENEFITS OF SETTLEMENT

The Settlement arises out of the Demands and Litigations on behalf of nominal defendant L Brands, alleging breaches of fiduciary duties, among other claims, against certain current and former officers and directors of the Company.    The Settling Shareholders alleged in the Actions that Individual Defendants breached their fiduciary duties in connection with the factual matters set out in the Actions.

Settling Shareholders' Counsel believe that the claims raised in the Litigations and Demands have merit and that their investigations support the claims asserted and threatened.  Without conceding the merit of any of the Defendants' defenses, and in light of the benefits of the Settlement as well as to avoid the potentially protracted time, expense, and uncertainty associated with continued litigation, including potential trial(s) and appeal(s), Settling Shareholders and Settling Shareholders' Counsel have concluded that it is desirable that the Litigations be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation.  Settling Shareholders and Settling Shareholders' Counsel recognize the significant risk, expense, and length of continued proceedings necessary to prosecute the Actions against Defendants through trial(s) and through possible appeal(s).  Settling Shareholders' Counsel have also taken into account the uncertain outcome and the risk of any litigation, especially complex litigation such as would be entailed by the Actions, the difficulties and delays inherent in such litigation, the cost to L Brands – on behalf of which Settling Shareholders filed the Litigations or made Demands – and distraction to management of L Brands that would result from extended litigation.  Based on their evaluation, and in light of what Settling Shareholders and Settling Shareholders' Counsel believe to be the significant benefits conferred upon L Brands as a result of the Settlement, Settling Shareholders and Settling Shareholders'

Counsel have determined that the Settlement is in the best interests of Settling Shareholders and L Brands and have agreed to settle the Litigations and the Demands upon the terms and subject to the conditions set forth herein.

Pursuant to the terms set forth below, this Stipulation (including the exhibits hereto) shall in no event be construed as, or deemed to be evidence of, an admission or concession by the Settling Shareholders of any infirmity in any of the claims asserted in the Actions, or an admission or concession that any of the Defendants' defenses to liability or damages had any merit.

## IV.     DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Each of the Individual Defendants denied and continues to deny that he or she has committed or attempted to commit any violations of law, any breaches of fiduciary duty owed to L Brands, or any wrongdoing whatsoever, and expressly maintains that, at all relevant times, he or she acted in good faith and in a manner that he or she reasonably believed to be in the best interests of L Brands and its stockholders. Each of the Individual Defendants likewise deny all of the allegations made by the Settling Shareholders in the Actions. Defendants further deny that Settling Shareholders, L Brands, or its stockholders suffered any damage or were harmed as a result of any act, omission, or conduct by the Individual Defendants as alleged in the Actions or otherwise. Defendants further assert, among other things, that the Settling Shareholders lack standing to litigate derivatively on behalf of L Brands because certain of the Settling Shareholders have not yet pleaded, and cannot properly plead, that a demand on the Board would be futile; and other of the Settling Shareholders have not yet pleaded, and cannot properly plead, that demand on the Board was improperly refused.

L Brands believes that the Settlement is in the best interest of the Company, its stockholders, and its employees.  Defendants are, therefore, entering into this Settlement for the benefit of L Brands to eliminate the uncertainty, distraction, disruption, burden, risk, and expense of further litigation.  Pursuant to the terms set forth below, this Stipulation (including the exhibits hereto) shall in no event be construed as, or deemed to be evidence of, an admission or concession by the Individual Defendants with respect to any claim of fault, liability, wrongdoing, or damage or any defect in the defenses that Individual Defendants have, or could have, asserted.

## V.  POSITION OF THE SPECIAL COMMITTEE

After deliberation and consideration of all information reasonably available to it, the Special Committee has unanimously concluded, in an exercise of its fiduciary duties, that the terms of the Settlement are fair and reasonable to L Brands and its stockholders and that it is in the best interests of the Company and its stockholders to enter into this Stipulation. The Special Committee has further unanimously concluded, in an exercise of its fiduciary duties, that the Settlement, including the improvements and changes in corporate governance since February 2020, confers substantial benefits on the Company and its stockholders and that L Brands is authorized, subject to Court approval, to enter into and take all actions necessary to effectuate the Settlement.

## VI.  TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among the Settling Shareholders (for themselves and derivatively on behalf of L Brands), the Individual Defendants, and L Brands, by and through the Special Committee, each by and through their respective attorneys of record, that in exchange for the consideration set forth below and the benefits flowing to the Parties from the Settlement, and subject to the

17

approval of the Court, the Settling Matters and the Released Claims shall be fully, finally, and forever compromised, settled, discharged, relinquished, and released, and each of the Litigations shall be dismissed with prejudice as to all Defendants and claims, with full preclusive effect, as to all Parties, upon and subject to the terms and conditions of the Stipulation, as set forth below.

### 1. Settlement Consideration

1.1 In consideration of the Settlement and the releases provided under the Settlement, and subject to the terms and conditions of this Stipulation, the Parties agree that the Company will implement and maintain the Management & Governance Measures detailed in Exhibit E, throughout L Brands, including, among other things: (i) supplementing the existing Code of Conduct with standalone policies on (a) sexual harassment, (b) reporting, and (c) anti-retaliation; (ii) strengthening and clarifying the process for reporting and investigating claims of sexual harassment (including hostile work environment), gender discrimination, and retaliation related to the same (the "Subject Conduct"); (iii) conforming the Company's policy regarding nondisclosure agreements to be consistent with New York law and not enforcing provisions of previously-entered agreements that prohibit a complainant from discussing the underlying facts and circumstances of a sexual harassment claim; (iv) exempting claims of Subject Conduct from mandatory arbitration provisions; (v) instituting new and enhanced employee and Board training regarding harassment and workplace civility; (vi) requiring contractor compliance with L Brands policies; (vii) collecting and evaluating data related to harassment and retaliation; (viii) maintaining a Diversity, Equity, & Inclusion ("DEI") Council; (ix) retaining a DEI consultant; and (x) updating Board committee charters to reflect oversight and responsibility over the subject matter of the reforms.

1.2     Such reforms shall be in place throughout the Company for a period of five (5) years from the Effective Date of the Settlement.   A detailed list of the Management & Governance Measures to be implemented is attached hereto as Exhibit E.

1.3     The Company shall undertake to implement the Management & Governance Measures within six months of approval of the Settlement, except for the measures related to surveys and data collection, which the Company shall undertake to implement within one year of the Settlement.

1.4     In order to provide appropriate funding for the Management & Governance Measures, L Brands commits to funding of $90 million over the course of at least five (5) years starting with the Effective Date of the Settlement.

1.5     If any of the terms of the Settlement Consideration set forth in Paragraphs 1.1 through 1.4 above should conflict with any applicable law(s), rule(s), or regulation(s), or the reasonable exercise of the Company's or its officers' or directors' fiduciary duties, the Company will comply with such applicable law(s), rule(s), or fiduciary duties, notwithstanding any provision herein.

1.6     Following the Effective Date of the Settlement, should the Board make a good faith determination that any term of the Settlement Consideration set forth in Paragraphs 1.1 through 1.4 above is contrary to the best interests of the Company, the Board may modify such provision (a "Modification") in the following manner:

a.     The Board, after informed consideration of the Modification, shall document the reasons for the Modification and shall approve the Modification.

b.     The Board will be advised by outside counsel in considering the Modification.

c.     The Board will adopt a reasonably narrowly tailored Modification that it determines to be consistent with the Company's best interests and with the purposes of this Settlement.

d.     Before the Modification takes effect, the Company shall provide notice to Settling Shareholders' Counsel of the Modification as approved by the Board and shall postpone implementation of the Modification for at least 60 days following such disclosure.

e.     As part of the Settlement, the Company, the Special Committee, and the current Board Members represent that the Board is not presently aware of any information that would require such a Modification.

f.     The Court retains jurisdiction to consider and resolve any disputes that may arise in connection with any Modification.

1.7     The Company agrees that, in the event of any transaction, including a sale, spin-off, or merger of any part of its business affected by the Management & Governance Measures following the execution of the Stipulation and during the five (5) year term of the Settlement ("Transaction"), the resulting or acquiring company shall have the obligation to maintain the Management & Governance Measures at the sold or spun-off entity(ies).  The Company further agrees to include in any agreement(s) governing such Transaction a provision that binds the resulting or acquiring company to the Management & Governance Measures.  In the event of any such Transaction, the Parties agree that the funding commitment set forth in Paragraph 1.4 shall be split evenly between the remaining L Brands entity(ies) and the sold or spun-off entity(ies).

## 2.    Procedure for Implementing the Settlement

2.1    Within seven (7) calendar days of the last party's execution of this Stipulation, Plaintiff's Counsel shall submit the Stipulation together with its exhibits to the Court and file a motion for preliminary approval of settlement, requesting, among other things:  (i) preliminary approval of the Settlement set forth in this Stipulation and entry of Preliminary Approval Order substantially in the form attached as Exhibit A hereto; (ii) approval of the method of providing notice to Current Company Stockholders and approval of the forms of Notice and Summary Notice attached as Exhibits B and C hereto; and (iii) a date for the Settlement Hearing.

2.2    The proposed Preliminary Approval Order provides that, within fourteen (14) calendar days of the Court's entry of the Preliminary Approval Order, Bath & Body Works and Victoria's Secret shall:  (i) each file a Form 8-K with the SEC which shall include the Notice as an attachment; (ii) cause the Summary Notice to be published in Investor's Business Daily; and (iii) post the Notice and Stipulation on Bath & Body Works' and Victoria's Secret's respective investor relations websites until the Judgment becomes Final.  Bath & Body Works shall cause to be paid all costs of notice of the Settlement (other than the Form 8-K to be filed by Victoria's Secret and the posting of the Notice and Stipulation on the Victoria's Secret investor relations website, which costs will be paid by Victoria's Secret) regardless of the content or manner of notice ordered by the Court and regardless of whether the Settlement is not approved by the Court or the Effective Date otherwise fails to occur.  Settling Shareholders' Counsel will also post the Notice on their firms' websites.  At least seven (7) calendar days prior to the Settlement Hearing, L Brands' counsel shall file with the Court an appropriate affidavit or declaration

with respect to filing of the Form 8-K, publication of the Summary Notice, and posting of the Notice and Stipulation.

2.3     The Parties believe the content and manner of the Notice, as set forth in the prior paragraph, constitutes adequate and reasonable notice to Current Company Stockholders pursuant to applicable law and due process.

2.4     The Parties agree to request that the Court hold a hearing in the Ohio Action sixty (60) days after Notice is given, at which time the Court will consider and determine whether the Judgment, substantially in the form of Exhibit D hereto, should be entered:  (i) approving the terms of the Settlement as fair, reasonable, and adequate; (ii) dismissing with prejudice the Ohio Action against Defendants; and (iii) ruling upon Settling Shareholders Counsel's application for a Fee and Expense Award.

2.5     Pending the Effective Date, the Parties agree that all proceedings and discovery in the Litigations shall be stayed (except as otherwise provided herein and the proceedings necessary to effectuate the consummation and final approval of the Settlement) and not to initiate any other proceedings other than those related to the Settlement itself.  The Parties shall not file, prosecute, instigate, or in any way participate in the commencement or prosecution of any of the Released Claims.

**3.     Dismissal of the Litigations and Withdrawal of the Demands**

3.1     This Settlement is conditioned on the dismissal with prejudice of all of the Litigations pending at the time of final approval and the withdrawal of the Demands.

3.2     Within ten (10) business days after the Court grants final approval of the Settlement, Settling Shareholders shall take, or cause to be taken, all actions, and to do, or cause to be done, all things necessary, proper, and appropriate to secure dismissal

with prejudice of the Litigations in their entireties as to all parties in those actions, and shall provide reasonable documentary assistance to Defendants as requested to assist Defendants' efforts to obtain dismissal of any stockholder derivative actions not listed above as part of the Litigations that may be later filed in any state or federal court asserting any of the Released Stockholder Claims against the Released Defendant Persons. In the interim, the Parties shall cooperate to, at a minimum, secure a postponement of any response deadline, hearing, or trial date(s) in the Litigations while this Settlement is under consideration by the Court. Settling Shareholders shall also withdraw all Demands.

### 4.     Fee and Expenses Award

4.1     L Brands agrees that the Settlement confers substantial benefits on L Brands and its stockholders, including but not limited to by way of the Settlement Consideration set forth herein. The Special Committee and L Brands agree that Plaintiffs' efforts substantially and materially contributed to the improvements and changes in corporate governance since February 2020. The Special Committee and Defendants agree that Settling Shareholders' Counsel are entitled to awards of reasonable attorneys' fees and expenses for their efforts in creating such benefits of the Settlement. After the Parties had agreed on all other material terms of the Settlement, the Parties separately negotiated in good faith to attempt to reach agreement concerning the amount of the Fee and Expense Award.

4.2     In light of benefits produced for L Brands by Settling Shareholders and Settling Shareholders' Counsel in connection with the Settlement, the Litigations, the Demands, and the 220 Action, L Brands has agreed, subject to approval of the Court, that Settling Shareholders' Counsel are entitled to a fee and expense award of $21 million. Pursuant to the agreement, Settling Shareholders' Counsel intend to seek a single award

of attorneys' fees and expenses (including the service awards referred to herein) from the Court of no more than $21 million, subject to approval by the Court ("Fee and Expense Award"). Settling Shareholders Rudi, Detroit, Lambrecht, and Giarratano may seek a service award not to exceed $10,000 for each such Settling Shareholder as part of the Fee and Expense Award. If awarded by the Court, each such service award shall be paid out of any Fee and Expense Award awarded to counsel representing that Settling Shareholder.

        4.3    Settling Shareholders and Settling Shareholders' Counsel agree that only a single application for the Fee and Expense Award shall be filed on behalf of all Settling Shareholders and Settling Shareholders' Counsel. Settling Shareholders and Settling Shareholders' Counsel agree that the Fee and Expense Award shall be filed with the Court no later than thirty-five (35) calendar days prior to the Settlement Hearing. Settling Shareholders and Settling Shareholders' Counsel agree not to request that any greater amount be awarded to Settling Shareholders' Counsel by the Court, not to seek payment of attorneys' fees and expenses from any person or entity other than L Brands or its insurers, and that no other or greater payments or awards shall be requested from the Court in connection with the Settling Matters. L Brands and the Individual Defendants agree not to oppose the requested Fee and Expense Award, including the service awards, so long as the Fee and Expense Award does not exceed $21 million.

        4.4    The amount of any Fee and Expense Award shall be subject to Court approval. Any changes by any court to the negotiated amount of any Fee and Expense Award will not otherwise affect the Finality of the Settlement. L Brands agrees that Bath & Body Works and/or the Defendants' insurers will pay for the Fee and Expense Award.

4.5     Bath & Body Works shall pay or Defendants shall cause their insurers to pay the full amount of any Fee and Expense Award awarded by the Court into a joint-signature escrow account maintained by Settling Shareholders' Counsel within twenty (20) business days of the latter of award by the Court or receipt of payment instructions, notwithstanding the existence of any collateral attacks on the Settlement or the Fee and Expense Award, including, without limitation, any objections to the Settlement or the Fee and Expense Aware or any appeals relating thereto.

4.6     The Fee and Expense Award is subject to Settling Shareholders' Counsel's obligations to make appropriate refunds or repayments into the escrow account, plus interest earned thereon at the same net rate as earned by the escrow account, if and when as a result of any appeal and/or further proceedings on remand, or successful collateral attack, approval of the Settlement is denied or overturned or the Fee and Expense Award is reduced or reversed and such order denying or overturning the Settlement or reducing or reversing the Fee and Expense Award becomes Final.  In such event, each of Settling Shareholders' Counsel shall, within twenty (20) business days from the event which requires repayment of the Fee and Expense Award, refund to the appropriate escrow account such portion of the Fee and Expense Award paid to or received by each of them, along with interest, as described above, after which, within seven (7) days, such amounts shall be repaid to Bath & Body Works and/or the Defendants' insurers in accordance with repayment instructions to be provided by L Brands' counsel.

4.7     Settling Shareholders' Counsel shall allocate the Fee and Expense Award amongst themselves in a manner which they, in good faith, believe reflects the contributions of such counsel to the institution, prosecution, and settlement of the Litigations and the Demands.  L Brands and Individual Defendants shall have no

responsibility or involvement in the allocation of attorneys' fees or expenses. If any disputes arise regarding the allocation of the Fee and Expense Award, such disputes shall be decided by Judge Phillips, first as a mediator, and if that fails, as the arbitrator. Judge Phillips determination as arbitrator shall be final, binding, and non-appealable.

4.8     Except as otherwise provided herein or except as provided pursuant to indemnification or insurance rights, each of the Parties shall bear his, her, or its own costs, expenses, and attorneys' fees.

4.9     The Court's decision granting, in whole or in part, the application by Settling Shareholders' Counsel for a Fee and Expense Award is not a condition of the Stipulation or to entry of the Judgment. The request by Settling Shareholders' Counsel for a Fee and Expense Award is to be considered by the Court separately from the Court's consideration of the question whether the Settlement is fair, reasonable, adequate, and in the best interests of L Brands and its stockholders. Any orders or proceedings relating to any request for a Fee and Expense Award, or any appeal from any order or proceedings relating thereto, shall not affect the validity or Finality of the Settlement, operate to terminate or cancel the Stipulation, and/or affect or delay either the Effective Date or the Finality of the Judgment approving the Settlement.

## 5.     Releases

5.1     Upon the Effective Date, L Brands acting directly, Settling Shareholders acting directly and derivatively on behalf of L Brands, and any other L Brands Stockholder acting derivatively on behalf of L Brands, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, discharged, and dismissed with prejudice the Released Stockholder Claims (including Unknown Claims) against the Released Defendant Persons and shall be forever

barred and enjoined from asserting, commencing, instituting, or prosecuting any of the Released Stockholder Claims against any Released Defendant Person.

   5.2 Upon the Effective Date, each of the Individual Defendants, the Special Committee, and L Brands shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, discharged, and dismissed with prejudice the Released Defendant Claims (including Unknown Claims) against the Released Stockholder Persons, and shall be forever barred and enjoined from asserting any Released Defendant Claims against any Released Stockholder Person.

   5.3 Nothing herein shall in any way impair or restrict the rights of any Party to enforce the terms of the Stipulation.

**6.  Conditions of Settlement**

   6.1 The Effective Date of the Settlement shall be the date on which all of the following events have occurred:

     a. approval of the Settlement at or after the Settlement Hearing following notice to Current Company Stockholders as set forth in Paragraph 2.2;

     b. entry of the Judgment, in all material respects in the form set forth as Exhibit D annexed hereto, approving the Settlement without awarding costs to any party, except as provided herein, dismissing the Ohio Action with prejudice pursuant to the terms of this Stipulation, and releasing the Released Persons from the Released Claims;

     c. the passing of the date upon which the Judgment becomes Final;

     d. dismissal with prejudice of the other pending Litigations;

     e. the withdrawal of the Demands; and

          f.        the passing of the dates upon which each of the dismissal orders in each of the Litigations become Final.

       6.2     If any of the conditions specified above in Paragraph 6.1 are not met, then the Stipulation shall be cancelled and terminated, unless all of the Parties agree in writing to proceed with the Stipulation. If for any reason this Stipulation is in any way canceled, terminated, or fails to become Final in accordance with its terms or the Effective Date otherwise fails to occur: (i) all Parties and Released Persons shall be restored to their respective positions prior to execution of the Term Sheet, with the exception of the tolling of the statute of limitations as provided under (iv) below; (ii) all releases delivered in connection with the Stipulation shall be null and void, except as otherwise provided for in the Stipulation; (iii) the Fee and Expense Award shall not be paid or, if already paid, shall be refunded to the escrow account in accordance with Paragraph 4.6; (iv) the statute of limitations for claims arising from the Demands will have been tolled from February 18, 2021 to the date that this Stipulation is in any way canceled or terminated; and (v) all negotiations, proceedings, documents prepared, and statements made in connection herewith shall be without prejudice to the Parties, shall not be deemed or construed to be an admission by any of the Parties of any act, matter, or proposition, and shall not be used or referred to in any manner for any purpose (other than to enforce the terms remaining in effect) in any subsequent proceeding in the Settling Matters or in any other action or proceeding. In such event, the terms and provisions of this Stipulation (other than those set forth in Paragraphs I(a)-(kk), 6.2, 7.6, and 7.8) shall have no further force and effect with respect to the Parties and shall not be used in the Settling Matters or in any other proceeding for any purpose.

6.3 No court order, modification, or reversal on appeal of any court order concerning any Fee and Expense Award and interest awarded by a court to Settling Shareholders' Counsel shall constitute grounds for cancellation or termination of the Stipulation, affect the enforceability of the Stipulation, or delay or preclude the Judgment from becoming Final.

## 7. Miscellaneous Provisions

7.1 The Parties (i) acknowledge that it is their intent to consummate the Settlement; and (ii) agree to act in good faith and cooperate to take all reasonable and necessary steps to expeditiously implement the terms and conditions of the Settlement set forth in this Stipulation.

7.2 The Parties intend this Settlement to be a final and complete resolution of all disputes between them arising out of, based upon, or related to the Settling Matters and the Released Claims. The Settlement compromises claims that are contested and shall not be deemed an admission by any Party as to the merits of any claim, allegation, or defense. The Parties and their respective undersigned counsel agree that, at all times during the course of the litigation, the Parties and their respective counsel acted in good faith, professionally, and in compliance with the requirements of the applicable laws and rules of the Court, the State of Ohio, the State of Delaware, and the Federal Rules of Civil Procedure (including, but not limited to, Ohio Rule of Civil Procedure 11, Federal Rule of Civil Procedure 11, and Delaware Court of Chancery Rule 11). The Parties agree that the Released Claims are being settled voluntarily after consultation with an experienced mediator and competent legal counsel who were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses.

7.3     In the event that any other disputes arise with respect to the terms of this Stipulation, any of its exhibits, or the Settlement more generally, or the presentation of the Settlement to the Court for approval, such disputes shall be submitted to the Court for resolution; provided, however, that in accordance with paragraph 4.6 above, any disputes relating to the allocation of the Fee and Expense Award among Settling Shareholders' Counsel will be resolved by Judge Phillips, first by way of mediation, and, if unsuccessful, then by way of final, binding, non-appealable arbitration.

7.4     Each of the Individual Defendants expressly denies and continues to deny all allegations of wrongdoing or liability against itself, himself, or herself arising out of or relating to any conduct, statements, acts, or omissions alleged, or which could have been alleged, in the Settling Matters. Each of the Individual Defendants reserves the right to rebut any and all allegations of breach of fiduciary duty, wrongdoing, or liability, whatsoever, against himself, herself, or itself or that any valid claim has been asserted against any of them.

7.5     The Parties in the Litigations agree to take such measures as may be needed to secure dismissals with prejudice of the Delaware Action pending in the Delaware Court of Chancery within ten (10) business days after the Court grants final approval of the Settlement, and all Demands shall be withdrawn. With respect to any other action that is not listed above as one of the Litigations and that is currently pending or is later filed in any state or federal court asserting any of the Released Stockholder Claims against the Released Defendant Persons prior to final Court approval of the Settlement, Settling Shareholders shall provide supporting documentation as is reasonably requested by Defendants in order to obtain the dismissal, stay, or withdrawal of such

related litigation, including where appropriate joining in any motion to dismiss or stay such litigation.

7.6     Neither the Stipulation (including any exhibits attached hereto) nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement:  (i) is or may be deemed to be or may be offered, attempted to be offered, or used or referred to in any way by the Parties as a presumption, a concession, an admission, or evidence of any fault, wrongdoing, or liability of any of the Parties or of the validity of any Released Claims; or (ii) is or may be deemed to be or may be used as a presumption, concession, admission, or evidence of any liability, fault, or omission of any of the Released Persons in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.  Neither this Stipulation nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Stipulation or the Settlement, shall be admissible in any proceeding for any purpose, except to enforce the terms of the Settlement, and except that the Released Persons may file the Stipulation and/or the Judgment in any action or proceeding that may be brought against them to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, full faith and credit, release, standing, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

7.7     Settling Shareholders' Counsel agree that within sixty (60) days of the Effective Date, they will return to the producing party all documents and other discovery material obtained from such producing party in any matter, including all documents produced by L Brands or the Special Committee, whether formally or informally in connection with the mediation, and all documents and materials produced

pursuant to Section 220 (collectively "Discovery Material"), or destroy all such Discovery Material; provided, however that Settling Shareholders' Counsel shall be entitled to retain all filings, court papers, interview and hearing transcripts, and attorney-work product containing or reflecting Discovery Material, subject to the requirement that Settling Shareholders' Counsel shall not disclose any information contained or referenced in the Discovery Material to any person except, following reasonable advance notice to L Brands, pursuant to a validly issued subpoena not subject to a motion to quash, court order, or agreement with L Brands.

7.8     All designations and agreements made and orders entered during the course of the Settling Matters relating to the confidentiality of documents or information, including the confidentiality agreement governing the Parties' mediation, shall survive this Settlement, provided, however, that nothing in this Stipulation is intended to restrict in any way Oregon or its counsel's ability to comply with the Oregon Public Records Law, Section 192.311 et seq. Nothing in this Stipulation, or the negotiations relating thereto, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, the attorney-client privilege, the joint defense privilege, or work product protection.

7.9     The Stipulation and the exhibits attached hereto constitute the entire agreement among the Parties with respect to the Settlement, and supersede any and all prior negotiations, discussions, agreements, or undertakings, whether oral or written, with respect to such matters. The Parties expressly acknowledge that, in entering into this Stipulation, they are not relying upon any statements, representations, or warranties by any Party except as expressly set forth herein. Settling Shareholders and L Brands agree that they intend to confer on all Released Defendant Persons the benefit of all releases and

other protections set forth in Paragraph 5.1 above. The Individual Defendants, the Special Committee, and L Brands agree that they intend to confer on all Released Stockholder Persons the benefit of all releases and other protections set forth in Paragraph 5.2 above. The Parties agree that each of the Released Persons who is not a Party is an express third-party beneficiary of those releases and other protections, and is entitled to enforce the terms of those releases and other protections to the same extent that such Released Persons who are not Parties could enforce such terms if they were party to the Stipulation. All provisions in the Stipulation providing that nothing herein shall in any way impair or restrict the rights of any Party to enforce the terms of this Stipulation are agreed to mean additionally that nothing herein shall in any way impair or restrict the rights of any Released Person who is not a Party to enforce the terms of the Stipulation.

7.10    This Stipulation supersedes and replaces any prior or contemporaneous writing, statement, or understanding pertaining to the Settling Matters, and no parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which the Stipulation was made or executed.

7.11    The exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

7.12    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

7.13    The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

7.14    This Stipulation shall be deemed drafted equally by all Parties hereto.

7.15    The Stipulation and the Settlement shall be binding upon, and inure to the benefit of, the Parties and the Released Persons and their respective successors, assigns, heirs, spouses, marital communities, executors, administrators, trustees in bankruptcy, and legal representatives.

7.16    The Stipulation and the exhibits attached hereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of Ohio, and the rights and obligations of the Parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of Ohio without giving effect to that State's choice-of-law principles.

7.17    No representations, warranties, or inducements have been made to any of the Parties concerning the Stipulation or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.

7.18    Settling Shareholders represent and warrant that they have not assigned or transferred or attempted to assign or transfer, to any Person any Released Stockholder Claim or any portion thereof or interest therein.

7.19    Any failure by any party to this Stipulation to insist upon the strict performance by any other party of any of the provisions of this Stipulation shall not be deemed a waiver of any of the provisions, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this Stipulation to be performed by such other party.

7.20    In the event that any portion of the Settlement is found to be unlawful, void, unconscionable, or against public policy by a court of competent jurisdiction, the remaining terms and conditions of the Settlement shall remain intact.

7.21    With the exception of Exhibit E (which states the Management & Governance Measures that form part of the Settlement), in the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibits hereto, the terms of this Stipulation shall prevail.

7.22    Each counsel or other Person executing the Stipulation or its exhibits on behalf of any of the Parties hereby warrants that such Person has the full authority to do so.

7.23    The Stipulation may be executed in one or more counterparts, each of which so executed shall be deemed to be an original and such counterparts together constitute one and the same Stipulation.  The Parties agree that signatures submitted through facsimile or by e-mailing .PDF files or signed using DocuSign shall constitute original and valid signatures.  A complete set of executed counterparts shall be filed with the Court.

7.24    The Court shall retain jurisdiction with respect to the interpretation, implementation, and enforcement of the terms of this Stipulation, and the Parties and their undersigned counsel submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation.

7.25    Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation.

IN WITNESS WHEREOF, the Parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys.

**IT IS HEREBY AGREED** by the undersigned as of July 29, 2021.

SCOTT+SCOTT Attorneys At Law LLP

By: _____

*Counsel for Plaintiff Milton Rudi and Detroit Police & Fire*

**COHEN MILSTEIN SELLERS**
    **& TOLL PLLC**

By: _____

and

**BERNSTEIN LITOWITZ BERGER &**
    **GROSSMANN LLP**

By: _____

*Counsel for the Oregon Department of Justice, as chief legal advisor to the Oregon State Treasurer, on behalf of the Oregon Public Employee Retirement Fund*

**DELEEUW LAW LLC**

By: _____

and

**GREENFIELD & GOODMAN LLC**

By: _____

*Counsel for Nancy A. Lambrecht, Co-Trustee of the Amanda Greenfield 2012 Irrevocable Trust*

QUINN EMANUEL URQUHART
   & SULLIVAN LLP

By: _____

and

BERNSTEIN LIEBHARD LLP

By: _____

and

SMITH, KATZENSTEIN & JENKINS LLP

By: _Kathleen Miller_ /s/ _____

*Counsel for John Giarratano and Maryann Kualii*

POTTER ANDERSON & CORROON LLP

By: _____

*Counsel for Dennis H. Hersch, Allan R. Tessler,*
*Donna A. James, Michael G. Morris, Robert H.*
*Schottenstein, Stephen G. Steinour, Patricia E.*
*Bellinger, E. Gordon Gee, and Raymond*
*Zimmerman*

ZEIGER TIGGES & LITTLE LLP

By: _____

*Counsel for Leslie Wexner and Abigail S. Wexner*

BAKER HOSTETLER LLP

By: _____

*Counsel for Edward Razek*

37

**QUINN EMANUEL URQUHART
 & SULLIVAN LLP**

By:_____

and

**BERNSTEIN LIEBHARD LLP**

By:_____

and

**SMITH, KATZENSTEIN & JENKINS LLP**

By:_____

*Counsel for John Giarratano and Maryann Kualii*

**POTTER ANDERSON & CORROON LLP**

By:_____

*Counsel for Dennis H. Hersch, Allan R. Tessler,
Donna A. James, Michael G. Morris, Robert H.
Schottenstein, Stephen G. Steinour, Patricia E.
Bellinger, E. Gordon Gee, and Raymond
Zimmerman*

**ZEIGER TIGGES & LITTLE LLP**

By:_____

*Counsel for Leslie Wexner and Abigail S. Wexner*

**BAKER HOSTETLER LLP**

By:_____

*Counsel for Edward Razek*

37

QUINN EMANUEL URQUHART
& SULLIVAN LLP


By:_____

and

**BERNSTEIN LIEBHARD LLP**


By:_____

and

**SMITH, KATZENSTEIN & JENKINS LLP**


By: _____

*Counsel for John Giarratano and Maryann Kualii*

**POTTER ANDERSON & CORROON LLP**


By:_____

*Counsel for Dennis H. Hersch, Allan R. Tessler,
Donna A. James, Michael G. Morris, Robert H.
Schottenstein, Stephen G. Steinour, Patricia E.
Bellinger, E. Gordon Gee, and Raymond
Zimmerman*

**ZEIGER TIGGES & LITTLE LLP**


By: _____

*Counsel for Leslie Wexner and Abigail S. Wexner*

**BAKER HOSTETLER LLP**


By:_____

*Counsel for Edward Razek*

STIPULATION AND AGREEMENT OF SETTLEMENT

QUINN EMANUEL URQUHART
  & SULLIVAN LLP


By:_____

and

**BERNSTEIN LIEBHARD LLP**


By:_____

and

**SMITH, KATZENSTEIN & JENKINS LLP**


By:_____

*Counsel for John Giarratano and Maryann Kualii*

**POTTER ANDERSON & CORROON LLP**


By:_____

*Counsel for Dennis H. Hersch, Allan R. Tessler,
Donna A. James, Michael G. Morris, Robert H.
Schottenstein, Stephen G. Steinour, Patricia E.
Bellinger, E. Gordon Gee, and Raymond
Zimmerman*

**ZEIGER TIGGES & LITTLE LLP**


By:_____

*Counsel for Leslie Wexner and Abigail S. Wexner*

**BAKER HOSTETLER LLP**

By: _____

*Counsel for Edward Razek*

Roger P. Sugarman

By:_____

and

**MCCOLLOM D'EMILIO SMITH
UEBLER LLC**

By:_____

*Counsel for David T. Kollat*

**WACHTELL LIPTON ROSEN & KATZ**

By:_____

and

**PORTER, WRIGHT, MORRIS
    & ARTHUR LLP**

By:_____

*Counsel for Sarah E. Nash and Anne Sheehan, the
Special Committee of the Board of Directors of L
Brands, Inc., acting on behalf of Nominal
Defendant L Brands, Inc.*

**Roger P. Sugarman**

By:_____

and

**MCCOLLOM D'EMILIO SMITH
UEBLER LLC**

By:_____

*Counsel for David T. Kollat*

**WACHTELL LIPTON ROSEN & KATZ**

By:_____

and

**PORTER, WRIGHT, MORRIS
    & ARTHUR LLP**

By:_____

*Counsel for Sarah E. Nash and Anne Sheehan, the
Special Committee of the Board of Directors of L
Brands, Inc., acting on behalf of Nominal
Defendant L Brands, Inc.*

STIPULATION AND AGREEMENT OF SETTLEMENT

**Roger P. Sugarman**

By:_____

and

**MCCOLLOM D'EMILIO SMITH UEBLER LLC**

By:_____

*Counsel for David T. Kollat*

**WACHTELL LIPTON ROSEN & KATZ**

By:_____

and

**PORTER, WRIGHT, MORRIS & ARTHUR LLP**

By:_____

*Counsel for Sarah E. Nash and Anne Sheehan, the Special Committee of the Board of Directors of L Brands, Inc., acting on behalf of Nominal Defendant L Brands, Inc.*

38

Roger P. Sugarman

By:_____

and

**MCCOLLOM D'EMILIO SMITH UEBLER LLC**

By:_____

*Counsel for David T. Kollat*

**WACHTELL LIPTON ROSEN & KATZ**

By:_____

and

**PORTER, WRIGHT, MORRIS & ARTHUR LLP**

By:_____

*Counsel for Sarah E. Nash and Anne Sheehan, the Special Committee of the Board of Directors of L Brands, Inc., acting on behalf of Nominal Defendant L Brands, Inc.*

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

MILTON RUDI,

                Plaintiff,

    vs.

LESLIE WEXNER, et al.,

                Defendants,

    and

L BRANDS, INC.,

                Nominal Defendant.

Case No. 2:20-cv-3068

Judge Michael H. Watson

Magistrate Judge Elizabeth P. Deavers

**[PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT AND
SETTING SETTLEMENT HEARING**

WHEREAS, a stockholder derivative litigation is pending in this Court entitled *Rudi* v. *Wexner, et al.*, Case No. 2:20-cv-3068 ("Ohio Action");

WHEREAS, a stockholder derivative litigation is pending in the Court of Chancery of the State of Delaware entitled *Lambrecht* v. *Wexner, et al.*, C.A. No. 2021-0029-JTL (Del. Ch.) ("Delaware Action") (together with the Ohio Action, the "Litigations");

WHEREAS, L Brands, Inc. ("L Brands" or the "Company") stockholders, including the Oregon Department of Justice, as chief legal advisor to the Oregon State Treasurer, on behalf of the Oregon Public Employee Retirement Fund ("Oregon"), John Giarratano ("Giarratano"), and Maryann Kualii ("Kualii"), have made demands to inspect the Company's books and records pursuant to Section 220 of the Delaware General

1

Corporation Law ("Section 220") and Giarratano commenced a Section 220 action in the Court of Chancery of the State of Delaware captioned *John Giarratano* v. *L Brands, Inc.*, Case No. 2020-0437-JRS (Del. Ch.) on June 4, 2020, which was voluntarily dismissed by stipulation on October 29, 2020;

WHEREAS, L Brands stockholders, including Milton Rudi ("Rudi" or "Plaintiff"), Nancy A. Lambrecht, Co-Trustee of the Amanda Greenfield 2012 Irrevocable Trust ("Lambrecht"), and the Detroit Police and Fire Retirement System ("Detroit"), have made litigation demands upon the L Brands Board of Directors;

WHEREAS, (1) Oregon; (2) Rudi; (3) Detroit; (4) Lambrecht; (5) Giarratano; and (6) Kualii (collectively with Rudi, Oregon, Detroit, Lambrecht, and Giarratano, the "Settling Shareholders"); (7) current and former members of the Board of Directors of L Brands, Inc. (the "Board"): Leslie H. Wexner, Abigail S. Wexner, Allan R. Tessler, Gordon Gee, Raymond Zimmerman, Patricia S. Bellinger, Donna A. James, Michael G. Morris, Sarah E. Nash, Robert H. Schottenstein, Anne Sheehan, Stephen D. Steinour, David T. Kollat, and Dennis S. Hersch (collectively, the "Board Members"); (8) former officers of L Brands, Inc.: Leslie H. Wexner and Edward Razek (the "Officers," and, together with the Board Members, the "Individual Defendants"); (9) nominal defendant L Brands, Inc. ("L Brands" or the "Company," and, together with the Individual Defendants, the "Defendants"); and (10) the Special Committee of the L Brands Board (the "Special Committee," and together with the Settling Shareholders and the Defendants, the "Parties") have entered into the Stipulation and Agreement of Settlement (the "Stipulation") dated July 29, 2021, which sets forth the terms and conditions of the proposed settlement (the "Settlement") that provides for a complete dismissal with prejudice of the claims asserted in the Litigations, withdrawal of the Demands, and the

release of the Released Claims on the terms and conditions set forth therein, subject to the approval of this Court;

WHEREAS, in accordance with the terms of the Stipulation, Plaintiff's Counsel filed an unopposed motion for an order preliminarily approving the Settlement and entry of this Preliminary Approval Order; approving the form, content, and method of providing notice of the Settlement to Current Company Stockholders; and scheduling the date and time for the Settlement Hearing, as defined herein;

WHEREAS, in accordance with the terms of the Stipulation, the Parties request that the Court hold the Settlement Hearing sixty (60) days after Notice is given;

WHEREAS, the Court has read and considered the Stipulation and its exhibits, including (i) the proposed Notice of Pendency and Proposed Settlement of Derivative Actions ("Notice"); (ii) the proposed Summary Notice of Pendency and Proposed Settlement of Derivative Actions ("Summary Notice"); and (iii) the proposed Order and Final Judgment finally approving the Settlement ("Judgment").

Finding that substantial and sufficient grounds exist for entering this Order, the Court hereby ORDERS as follows:

1. This Order incorporates by reference the definitions in the Stipulation and, unless otherwise defined in this Order, all capitalized terms used in this Order shall have the same meaning as set forth in the Stipulation.

2. The Court preliminarily approves the Settlement on the terms set forth in the Stipulation, subject to further consideration at a hearing to be held before the Court on _____, 2021, at _____ _.m., either in person at the United States District Court for the Southern District of Ohio, 85 Marconi Boulevard, Columbus, Ohio 43214 (the "Settlement Hearing") or by telephone or video conference, to consider whether the

Judgment, substantially in the form of Exhibit D to the Stipulation, should be entered: (i) finally approving the terms of the Settlement as fair, reasonable, and adequate and in the best interests of L Brands (which, as defined in the Stipulation, includes its successors Bath & Body Works and Victoria's Secret) and L Brands' Stockholders; (ii) dismissing with prejudice the Ohio Action against Defendants pursuant to the terms of the Stipulation; and (iii) ruling upon Settling Shareholders Counsel's application for a Fee and Expense Award.

3. The Court expressly reserves the right to adjourn the Settlement Hearing, or any adjournment thereof, without any further notice to L Brands Stockholders other than an announcement at the Settlement Hearing or at any adjournment of the Settlement Hearing. The Court expressly reserves the right to approve the proposed Settlement with such modifications as the Parties may agree to without further notice to L Brands Stockholders. The Court reserves the right to enter its Judgment approving the Settlement and dismissing the Released Stockholder Claims against the Defendants with prejudice regardless of whether the Court has awarded the Fee and Expense Award. The Court also reserves the right to extend any of the deadlines set forth in this Order without further notice to L Brands Stockholders. The Court further reserves the right to hold the Settlement Hearing by telephone or video conference without further notice to L Brands Stockholders. If the Court orders that the Settlement Hearing be conducted telephonically or by video conference, that decision will be posted on Bath & Body Works' and Victoria's Secret's respective investor relations websites.

4. The Court approves the form, content, and requirements of the Notice attached to the Stipulation as Exhibit B and the Summary Notice attached to the Stipulation as Exhibit C, and finds that the dissemination of the Notice and Summary

Notice, substantially in the manner and form set forth in this Order, meets the requirements of Rule 23.1 of the Federal Rules of Civil Procedure and due process, and constitutes due and sufficient notice of all matters relating to the Settlement.

5.      Within fourteen (14) calendar days of the Court's entry of this Order, Bath & Body Works and Victoria's Secret shall:  (i) each file a Form 8-K with the United States Securities and Exchange Commission which shall include the Notice as an attachment, (ii) cause the Summary Notice to be published in Investor's Business Daily, and (iii) post the Notice and Stipulation on Bath & Body Works' and Victoria's Secret's respective investor relations websites until the Judgment becomes Final.  Bath & Body Works shall cause to be paid all costs of notice of the Settlement (other than the Form 8-K to be filed by Victoria's Secret and the posting of the Notice and Stipulation on the Victoria's Secret investor relations website, which costs will be paid by Victoria's Secret) regardless of whether the Settlement is not finally approved by the Court or the Effective Date otherwise fails to occur.

6.      Settling Shareholders' Counsel will also post the Notice on their firms' respective websites.

7.      At least seven (7) calendar days prior to the Settlement Hearing, L Brands' counsel shall file with the Court an appropriate affidavit or declaration with respect to filing of the Form 8-K, publication of the Summary Notice, and posting of the Notice and Stipulation.

8.      Any Person who held L Brands stock as of July 29, 2021 and continues to hold common stock either in Bath & Body Works or Victoria's Secret as of the date of the Settlement Hearing ("Current Company Stockholder") may appear at the Settlement Hearing to show cause why the proposed Settlement should not be approved; why the

Judgment should not be entered thereon; or why Settling Shareholders' Counsel's application for the Fee and Expense Award should not be granted; *provided, however*, that no such Person shall be heard or entitled to contest the approval of the terms and conditions of the proposed Settlement, the Judgment to be entered approving the same, or the application for the Fee and Expense Award, unless such Person has filed with the Clerk of the United States District Court for the Southern District of Ohio, 85 Marconi Boulevard, Columbus, Ohio 43215, and served (by hand, first-class mail, or express service) on Settling Shareholders' Counsel and counsel for the Special Committee of the Board, a written and signed notice of objection that includes:  (i) the objector's name, address, and telephone number (and if represented, that of his, her, or its counsel), along with a representation as to whether the objector intends to appear at the Settlement Hearing; (ii) proof that the objector owned shares of L Brands common stock as of July 29, 2021, and continues to hold common stock either in Bath & Body Works or Victoria's Secret; (iii) a statement of the objections to any matters before the Court, the grounds for the objections or the reasons for the objector's desiring to appear and be heard, as well as all documents or writings the objector desires the Court to consider, including any legal and evidentiary support; and (iv) if the objector has indicated that he, she, or it intends to appear at the Settlement Hearing, the identities of any witnesses the objector may call to testify and any exhibits the objector intends to introduce into evidence at the Settlement Hearing.  Any such objection must be filed with the Court and received by the below-noted counsel by no later than twenty-one (21) calendar days prior to the Settlement Hearing.

**Counsel for Plaintiff Rudi and Detroit Police & Fire**
Geoffrey M. Johnson, Esq.
Scott + Scott Attorneys at Law LLP

12434 Cedar Road, Suite 12
Cleveland Heights, OH  44106

**Counsel for Oregon**
Julie G. Reiser, Esq.
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave NW, Suite 500
Washington, DC  20005

Mark Lebovitch, Esq.
Bernstein Litowitz Berger & Grossmann LLP
1251 Avenue of the Americas
New York, NY  10020

**Counsel for Giarratano and Kualii**
Manisha M. Sheth, Esq.
Quinn Emanuel Urquhart & Sullivan LLP
51 Madison Avenue, 22nd Floor,
New York, New York  10010

Stanley D. Bernstein, Esq.
Bernstein Liebhard LLP
10 East 40th Street
New York, New York  10016

**Counsel for Lambrecht**
P. Bradford deLeeuw, Esq.
deLeeuw Law LLC
1301 Walnut Green Road
Wilmington, Delaware  19807

Richard D. Greenfield, Esq.
Greenfield & Goodman LLC
1905 Spruce Street
Philadelphia, PA  19103

**Counsel for the Special Committee of the Board, acting on behalf of L Brands**
William D. Savitt
Wachtell, Lipton, Rosen & Katz
51 W. 52nd Street
New York, NY  10019

Robert W. Trafford
Porter, Wright, Morris & Arthur
41 South High Street
Suites 2800 - 3200
Columbus, OH  43215

7

9.     Documentation establishing ownership of L Brands, Bath & Body Works, and/or Victoria's Secret common stock must consist of copies of monthly brokerage account statements, or an authorized statement from the objector's broker containing the information found in an account statement.

10.     Any Person who fails to object in the manner described above shall be deemed to have waived the right to object to any aspect of the proposed Settlement and the Fee and Expense Award (including any right of appeal or collateral attack); be forever barred and foreclosed from objecting to the fairness, reasonableness, or adequacy of the Settlement, the Judgment to be entered approving the Settlement, or the Fee and Expense Award; and be deemed to have waived and forever barred and foreclosed from being heard, in this or any other proceeding with respect to any matters concerning the Settlement or the Fee and Expense Award.

11.     Plaintiff shall file and serve papers in support of final approval of the proposed Settlement, and Settling Shareholders' Counsel shall file and serve papers in support of their application for the Fee and Expense Award, by no later than thirty-five (35) calendar days prior to the Settlement Hearing; any objections thereto shall be filed and served no later than twenty-one (21) calendar days prior to the Settlement Hearing. If reply papers are necessary, they are to be filed and served by no later than seven (7) calendar days prior to the Settlement Hearing. The Parties shall be permitted to file reply papers regardless of whether they filed opening papers in support of the proposed Settlement. Only a single application for the Fee and Expense Award shall be filed on behalf of all Settling Shareholders and Settling Shareholders' Counsel.

12.     Until otherwise ordered by the Court, the Court stays all proceedings in the Ohio Action other than proceedings necessary to carry out or enforce the terms and conditions of the Stipulation.

13.     Pending final determination of whether the Settlement is approved, the Court bars and enjoins all Settling Shareholders and all other L Brands Stockholders from asserting, commencing, instituting, or prosecuting any of the Released Stockholder Claims against any of the Released Defendant Persons.

14.     Neither the Stipulation (including any exhibits attached thereto), nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement:  (i) is or may be deemed to be or may be offered, attempted to be offered, or used or referred to in any way by the Parties as a presumption, a concession, an admission, or evidence of any fault, wrongdoing, or liability of any of the Parties or of the validity of any Released Claims; or (ii) is or may be deemed to be or may be used as a presumption, concession, admission, or evidence of any liability, fault, or omission of any of the Released Persons in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.  Neither the Stipulation nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement, shall be admissible in any proceeding for any purpose, except to enforce the terms of the Settlement, and except that the Released Persons may file the Stipulation and/or the Judgment in any action or proceeding that may be brought against them to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, full faith and credit, release, standing, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

9

15.     The Court retains jurisdiction to consider all further applications arising

out of or connected with the proposed Settlement.

IT IS SO ORDERED this _____ day of _____, 2021.


_____
MICHAL H. WATSON
UNITED STATES DISTRICT JUDGE

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| MILTON RUDI,<br><br>     Plaintiff,<br><br> vs.<br><br>LESLIE WEXNER, et al.,<br><br>     Defendants,<br><br> and<br><br>L BRANDS, INC.,<br><br>     Nominal Defendant. | Case No. 2:20-cv-3068<br><br>Judge Michael H. Watson<br><br>Magistrate Judge Elizabeth P. Deavers |

**NOTICE OF PENDENCY AND PROPOSED SETTLEMENT**
**OF DERIVATIVE ACTIONS**

**TO: ALL PERSONS AND ENTITIES WHO HELD L BRANDS, INC. COMMON STOCK AS OF JULY 29, 2021 AND WHO CONTINUE TO HOLD COMMON STOCK EITHER IN BATH & BODY WORKS, INC. OR VICTORIA'S SECRET & CO. AS OF THE CLOSE OF TRADING ON _____, 2021.**

  **PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY.** This Notice relates to a proposed settlement ("Settlement") of the following derivative actions: *Rudi* v. *Wexner, et al.*, Case No. 2:20-cv-3068 (S.D. Ohio) ("Ohio Action") and *Lambrecht* v. *Wexner, et al.*, C.A. No. 2021-0029-JTL (Del. Ch.) ("Delaware Action") (together, the "Litigations"), as well as litigation demands and demands to inspect the Company's books and records under Section 220 of the Delaware General Corporation Law made by L Brands, Inc. stockholders (together, the "Settling Matters"). If the Court approves the proposed Settlement, you will be forever barred from contesting the fairness, adequacy, and reasonableness of the proposed Settlement and from pursuing the Released Stockholder Claims.

  All capitalized terms used in this Notice that are not otherwise defined herein have the meanings provided in the Stipulation and Agreement of Settlement entered into on July 29, 2021 ("Stipulation"), by and among (1) the Oregon Department of Justice, as chief legal advisor to the Oregon State Treasurer, on behalf of the Oregon Public Employee Retirement Fund ("Oregon"); (2) Milton Rudi ("Rudi"); (3) Detroit Police and

Fire Retirement System ("Detroit"); (4) Nancy A. Lambrecht, Co-Trustee of the Amanda Greenfield 2012 Irrevocable Trust ("Lambrecht"); (5) John Giarratano ("Giarratano"); and (6) Maryann Kualii ("Kualii") (collectively with Oregon, Rudi, Detroit, Lambrecht, and Giarratano, the "Settling Shareholders"); (7) current and former members of the Board of Directors of L Brands, Inc. (the "Board"): Leslie H. Wexner, Abigail S. Wexner, Allan R. Tessler, Gordon Gee, Raymond Zimmerman, Patricia S. Bellinger, Donna A. James, Michael G. Morris, Sarah E. Nash, Robert H. Schottenstein, Anne Sheehan, Stephen D. Steinour, David T. Kollat, and Dennis S. Hersch (collectively, the "Board Members"); (8) former officers of L Brands, Inc.: Leslie H. Wexner and Edward Razek (the "Officers," and, together with the Board Members, the "Individual Defendants"); (9) nominal defendant L Brands, Inc. ("L Brands" or the "Company," and, together with the Individual Defendants, the "Defendants"); and (10) the Special Committee of the L Brands Board (the "Special Committee," and together with the Settling Shareholders and the Defendants, the "Parties").

**THIS NOTICE PROVIDES ONLY A SUMMARY OF THE MATERIAL TERMS OF THE SETTLEMENT AND RELEASES.** You can obtain more information by reviewing the Stipulation, which is available on the Bath & Body Works, Inc. (Bath & Body Works) and Victoria's Secret & Co. ("Victoria's Secret") investor relations websites at [_____] and [_____] and on Settling Shareholders' Counsel's websites at [_____].

Because the Settlement involves the resolution of derivative actions, which were brought on behalf of and for the benefit of the Company, and stockholder litigation and books and records demands, the benefits from the settlement will go to L Brands (which, as defined in the Stipulation, includes its successors Bath & Body Works and Victoria's Secret). Individual L Brands Stockholders will not receive any direct payment from the Settlement. **ACCORDINGLY, THERE IS NO PROOF OF CLAIM FORM FOR STOCKHOLDERS TO SUBMIT IN CONNECTION WITH THIS SETTLEMENT**.

**STOCKHOLDERS ARE NOT REQUIRED TO TAKE ANY ACTION IN RESPONSE TO THIS NOTICE.**

## I. PURPOSE OF NOTICE

1. The purpose of this Notice is to explain the Settling Matters, the terms of the proposed Settlement of those litigations and stockholder litigation and books and records demands, and how the proposed Settlement affects L Brands' Stockholders' legal rights. This Notice is issued pursuant to an Order of the United States District Court for the Southern District of Ohio, Eastern Division (the "Court") dated _____, 2021 ("Preliminary Approval Order"), and further pursuant to the requirements of the Federal Rules of Civil Procedure, including Rule 23.1.

2. The Court will hold a hearing on _____, 2021 at ____ _.m., either in person at the United States District Court for the Southern District of Ohio, 85 Marconi Boulevard, Columbus, Ohio 43214 (the "Settlement Hearing"), or by telephone or video conference (in the discretion of the Court) to consider whether the Judgment, substantially in the form of Exhibit D to the Stipulation, should be entered: (i) approving the terms of the Settlement as fair, reasonable, and adequate and in the best interests of L Brands

(which, as defined in the Stipulation, includes its successors Bath & Body Works and Victoria's Secret ) and L Brands' Stockholders; (ii) dismissing with prejudice the Ohio Action against Defendants pursuant to the terms of the Stipulation; and (iii) ruling upon Settling Shareholders Counsel's application for a Fee and Expense Award. You have a right to participate in the Settlement Hearing.

3.     This Notice describes the rights you may have in the Settling Matters and pursuant to the Stipulation and what steps you may take, but are not required to take, in relation to the Settlement.

## II.   BACKGROUND OF THE SETTLING MATTERS

### A.  Factual Background

4.     The Settlement arises out of the Litigations and Demands alleging breaches of fiduciary duty, among other claims, against certain current and former officers and directors of L Brands. The Settling Shareholders alleged that the Individual Defendants breached their fiduciary duties in connection with, among other things, (1) an alleged pattern of sexual harassment and retaliation by certain executives at the Company; (2) alleged failures of oversight by the Board; (3) alleged ties between the Company and Jeffrey Epstein; and (4) alleged corporate waste.

5.     The Individual Defendants deny the allegations made by the Settling Shareholders in the Litigations and Demands.

### B.  The Ohio Action

6.     On May 19, 2020, Plaintiff Rudi filed a stockholder derivative action in the Court of Common Pleas of Franklin County, Ohio, asserting a claim for breach of fiduciary duty against certain of the Individual Defendants (*Rudi v. Wexner, et al.*, Case No. 20CV003259). Prior to filing suit, Plaintiff Rudi had made a litigation demand on the Board (dated February 6, 2020; supplemented April 3, 2020). On June 16, 2020, defendants removed the action to this Court. On July 6, 2020, the parties to the action informed the Court that the L Brands Board had created a Special Committee of directors that had been delegated the full power and authority of the Board to review, investigate, and evaluate the subject matter of litigation demands made by Plaintiff on the Board on February 12, 2020 and April 3, 2020 and to take any action it deems reasonably necessary and in the best interests of the Company and its stockholders to address those demands or their subject matter, including any claims or litigation relating to their subject matter.

7.     In the July 6, 2020 filing, the parties to the action also agreed to stay the proceedings in light of the Special Committee's ongoing work. On December 29, 2020, the parties to the action agreed to extend the stay of proceedings because the Special Committee's work was ongoing. At a March 26, 2021 status conference, they informed the Court that the Parties had agreed to participate in a mediation session on April 21, 2021 with the Hon. Layn Phillips. The Court extended the stay on March 26, 2021. In a June 29, 2021 joint status report, the parties to the action informed the Court that the Parties had participated in a second mediation session with Judge Phillips on June 14, 2021, which had resulted in the Parties signing a term sheet setting forth the material terms

3

of the Settlement (the "Term Sheet"). The Court extended the stay to August 30, 2021 so that the Parties could formalize the Settlement.

### C. The Delaware Action

8. On January 12, 2021, Lambrecht filed a stockholder derivative action in the Delaware Court of Chancery, asserting claims for breach of fiduciary duty and waste against the Individual Defendants (*Lambrecht v. Wexner, et al.*, C.A. No. 2021-0029-JTL). Prior to filing suit, Lambrecht had made a litigation demand on the Board (dated July 10, 2020).

### D. The Books and Records Requests and the 220 Action

9. On February 7, 2020, Oregon made a demand to inspect books and records pursuant to Section 220 of the Delaware General Corporation Law ("Section 220"). The demand sought to investigate alleged breaches of fiduciary duty by officers and directors of L Brands. Oregon made supplemental books and records demands on February 25, 2020 and May 7, 2020. The Company produced documents in response to Oregon's books and records requests.

10. On February 12, 2020, Giarratano served L Brands with a books and records demand pursuant to Section 220, seeking to investigate alleged breaches of fiduciary duty by officers and directors of L Brands. On June 4, 2020, Giarratano filed a Section 220 action in the Delaware Court of Chancery to obtain the requested books and records (*Giarratano v. L Brands, Inc.,* C.A. No. 2020-0437-JRS). One month before the scheduled trial date of November 23, 2020, the Company agreed to produce documents in response to Giarratano's books and records request. The action was voluntarily dismissed by stipulation on October 29, 2020.

### E. The Detroit Police and Fire Litigation Demand

11. On February 23, 2021, Detroit made a litigation demand on the Board, via counsel for the Special Committee, making similar factual allegations as Plaintiff Rudi and requesting similar relief.

### F. The Special Committee

12. On May 14, 2020, the Board formed the Special Committee and delegated it the full power and authority of the Board to review, investigate, and evaluate the subject matter of the Demands and to take any action it deems reasonably necessary and in the best interests of the Company and its stockholders, on behalf of the Board and the Company, to address the Demands or their subject matter and any stockholder demands, claims, or litigation that may be asserted arising out of the Demands or relating to their subject matter. The Special Committee was empowered to retain its own independent advisors and undertook over the course of many months a thorough and independent investigation of the allegations and claims asserted in the Demands and Litigations. Following its investigation, the Special Committee determined that it would not be in the best interests of the Company or its stockholders to pursue litigation, but that those

interests might well be served by attempting to resolve the claims in the Demands and Litigations through a global settlement.

**G.  The Meet and Confer Process and Extensive Settlement Negotiations**

13.     In advance of the proposed mediation, Settling Shareholders reviewed internal documents produced by L Brands.  These documents included, among other things, (1) minutes, agendas, board packages, and other materials relating to regularly conducted and special meetings of the Board and Board committees; (2) internal L Brands policies, including the Code of Conduct, investigation manuals, and policies and procedures; and (3) materials relating to the independence of the members of the Special Committee.  Settling Shareholders also conducted numerous meetings and phone calls with the Special Committee's counsel.  Settling Shareholders' Counsel pressed the Special Committee and Wachtell Lipton for detailed descriptions of the Special Committee's process and progress in its investigation, for production of relevant documents, and to explore possible paths to resolution.   Settling Shareholders' Counsel also shared investigation suggestions and results of Settling Shareholders' own independent investigations as to the alleged wrongdoing by Defendants.  To that end, several of the Settling Shareholders' Counsel made detailed presentations to the Special Committee concerning their own investigations, investigative suggestions for the Special Committee, and potential reforms.

14.     Settling Shareholders' Counsel have engaged in extensive settlement negotiations with Defendants, spanning many months.  The settlement negotiations were mediated through the Hon. Layn R. Phillips (Ret.) of Phillips ADR.  The Parties engaged in a full-day mediation on April 21, 2021.  Judge Phillips presided, and the mediation session was held by Zoom.

15.     While no final resolution was reached at that time, the Parties continued their dialogue, including through frequent working group sessions, with the ongoing assistance of the mediator.  Over several sessions, the working group negotiated the detailed Management & Governance Measures that form part of the Settlement and are attached to the Stipulation as Exhibit E.

16.     On June 14, 2021, the Parties engaged in another full-day mediation.  After the Parties reached an agreement in principle, Settling Shareholders' Counsel negotiated a term sheet setting forth the material terms of the Settlement.

17.     Following the agreement to the material terms of the Settlement, Settling Shareholders took discovery consisting of interviewing one member of the Special Committee and representatives of counsel for the Special Committee, and reviewing relevant documents produced by the Special Committee.  This discovery confirmed that the terms of the Settlement are fair and reasonable to L Brands and its stockholders and that it is in the best interests of the Company and its stockholders to enter into the Stipulation..

18.     The Parties thereafter reached a definitive agreement to settle the Litigations and Demands, upon the terms and conditions set forth in the Stipulation, dated July 29, 2021.

5

19.     On _____, 2021, the Court entered the Preliminary Approval Order in connection with the Settlement which, among other things, preliminarily approved the Settlement, authorized this Notice to be provided to Current Company Stockholders, and scheduled the Settlement Hearing to consider whether to grant final approval of the Settlement.

## III.     TERMS OF THE SETTLEMENT

20.     In consideration of the Settlement and the releases provided therein, and subject to the terms and conditions of the Stipulation, the Parties have agreed to the following Settlement Consideration for L Brands (which, as defined in the Stipulation, includes its successors Bath & Body Works and Victoria's Secret).

21.     The Company will implement and maintain the Management & Governance Measures detailed in Exhibit E to the Stipulation, throughout L Brands, including, among other things:  (i) supplementing the existing Code of Conduct with standalone policies on (a) sexual harassment, (b) reporting, and (c) anti-retaliation; (ii) strengthening and clarifying the process for reporting and investigating  claims of sexual harassment (including hostile work environment), gender discrimination, and retaliation related to the same (the "Subject Conduct"); (iii) conforming the Company's policy regarding nondisclosure agreements to be consistent with New York law and not enforcing provisions of previously-entered agreements that prohibit a complainant from discussing the underlying facts and circumstances of a sexual harassment claim; (iv) exempting claims of Subject Conduct from mandatory arbitration provisions; (v) instituting new and enhanced employee and Board training regarding harassment and workplace civility; (vi) requiring contractor compliance with L Brands policies; (vii) collecting and evaluating data related to harassment and retaliation; (viii) maintaining a Diversity, Equity, & Inclusion ("DEI") Council; (ix) retaining a DEI consultant; and (x) updating Board committee charters to reflect oversight and responsibility over the subject matter of the reforms.

22.     Such reforms shall be in place throughout the Company for a period of five (5) years from the Effective Date of the Settlement.  A detailed list of the Management & Governance Measures to be implemented is attached to the Stipulation as Exhibit E.

23.     The Company shall undertake to implement the Management & Governance Measures within six months of approval of the Settlement, except for the measures related to surveys and data collection, which the Company shall undertake to implement within one year of the Settlement.

24.     In order to provide appropriate funding for the Management & Governance Measures, L Brands commits to funding of $90 million over the course of at least five (5) years starting with the Effective Date of the Settlement.

25.     L Brands further agrees that, in the event of any transaction, including a sale, spin-off, or merger of any part of its business affected by the Management & Governance Measures following the execution of the Stipulation and during the five (5) year term of the Settlement ("Transaction"), the resulting or acquiring company shall have the obligation to maintain the Management & Governance Measures at the sold or spun-

off enity(ies). The Company further agrees to include in any agreement(s) governing such Transaction a provision that binds the resulting or acquiring company to the Management & Governance Measures. In the event of any such Transaction, the Parties agree that the funding commitment set forth in Paragraph 24 above shall be split evenly between the remaining L Brands entity(ies) and the sold or spun-off entity(ies).

## IV.     REASONS FOR THE SETTLEMENT

26.     Settling Shareholders' Counsel believe that the claims raised in the Litigations and Demands have merit and that their investigations support the claims asserted and threatened. Without conceding the merit of any of the Defendants' defenses, and in light of the benefits of the Settlement as well as to avoid the potentially protracted time, expense, and uncertainty associated with continued litigation, including potential trial(s) and appeal(s), Settling Shareholders and Settling Shareholders' Counsel have concluded that it is desirable that the Litigations be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation. Settling Shareholders and Settling Shareholders' Counsel recognize the significant risk, expense, and length of continued proceedings necessary to prosecute the Actions against Defendants through trial(s) and through possible appeal(s). Settling Shareholders' Counsel have also taken into account the uncertain outcome and the risk of any litigation, especially complex litigation such as would be entailed by the Actions, the difficulties and delays inherent in such litigation, the cost to L Brands – on behalf of which Settling Shareholders filed the Litigations or made Demands – and distraction to management of L Brands that would result from extended litigation. Based on their evaluation, and in light of what Settling Shareholders and Settling Shareholders' Counsel believe to be the significant benefits conferred upon L Brands as a result of the Settlement, Settling Shareholders and Settling Shareholders' Counsel have determined that the Settlement is in the best interests of Settling Shareholders and L Brands and have agreed to settle the Litigations and the Demands upon the terms and subject to the conditions set forth in the Stipulation.

27.     Pursuant to the terms set forth in the Stipulation, the Stipulation (including the exhibits hereto) shall in no event be construed as, or deemed to be evidence of, an admission or concession by the Settling Shareholders of any infirmity in any of the claims asserted in the Actions, or an admission or concession that any of the Defendants' defenses to liability or damages had any merit.

28.     Each of the Individual Defendants denied and continues to deny that he or she has committed or attempted to commit any violations of law, any breaches of fiduciary duty owed to L Brands, or any wrongdoing whatsoever, and expressly maintains that, at all relevant times, he or she acted in good faith and in a manner that he or she reasonably believed to be in the best interests of L Brands and its stockholders. Each of the Individual Defendants likewise deny all of the allegations made by the Settling Shareholders in the Actions. Defendants further deny that Settling Shareholders, L Brands, or its stockholders suffered any damage or were harmed as a result of any act, omission, or conduct by the Individual Defendants as alleged in the Actions or otherwise. Defendants further assert, among other things, that the Settling Shareholders lack standing to litigate derivatively on behalf of L Brands because certain of the Settling Shareholders have not yet pleaded, and cannot properly plead, that a demand on the Board would be futile; and other of the

Settling Shareholders have not yet pleaded, and cannot properly plead, that demand on the Board was improperly refused.

29.     L Brands believes that the Settlement is in the best interest of the Company, its stockholders, and its employees.  Defendants are, therefore, entering into this Settlement for the benefit of L Brands to eliminate the uncertainty, distraction, disruption, burden, risk, and expense of further litigation.  Pursuant to the terms set forth below, this Stipulation (including the exhibits hereto) shall in no event be construed as, or deemed to be evidence of, an admission or concession by the Individual Defendants with respect to any claim of fault, liability, wrongdoing, or damage or any defect in the defenses that Individual Defendants have, or could have, asserted.

30.     After deliberation and consideration of all information reasonably available to it, the Special Committee has unanimously concluded, in an exercise of its fiduciary duties, that the terms of the Settlement are fair and reasonable to L Brands and its stockholders and that it is in the best interests of the Company and its stockholders to enter into the Stipulation.  The Special Committee has further unanimously concluded, in an exercise of its fiduciary duties, that the Settlement, including the improvements and changes in corporate governance since February 2020, confers substantial benefits on the Company and its stockholders and that L Brands is authorized, subject to Court approval, to enter into and take all actions necessary to effectuate the Settlement.

## V.     <u>RELEASES</u>

31.     If the Settlement is approved, the Court will enter a Judgment dismissing the Ohio Action with prejudice pursuant to the terms of the Stipulation, the Settling Shareholders will withdraw their Demands and dismiss the Delaware Action, and, upon the Effective Date of the Settlement,[1] the following releases will occur:

32.     L Brands acting directly, Settling Shareholders acting directly and derivatively on behalf of L Brands, and any other L Brands Stockholder acting derivatively on behalf of L Brands, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, discharged, and dismissed with prejudice the Released Stockholder Claims (including Unknown Claims) against the Released Defendant Persons, which, as detailed in the Stipulation, means any and all claims, rights, demands, obligations, controversies, debts, disputes, damages, losses, actions, causes of action, issues, liabilities, and charges of any kind or nature whatsoever, whether in law or equity, including both known claims and Unknown Claims, suspected or unsuspected, accrued or unaccrued, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, whether arising under federal or state statutory or common law, or any other law, rule, or regulation, whether foreign or domestic, that  (i) were asserted in any of the complaints filed in the Litigations or in the Demands in the Settling Matters, or (ii) could have been asserted by L Brands directly, by

---

[1] The Effective Date of the Settlement is conditioned on the occurrence of each of the events described in Paragraph 6.1 of the Stipulation, which include the entry of the Judgment by the Court approving the Settlement and dismissing the Ohio Action with prejudice, the dismissal with prejudice of the other pending Litigations, the withdrawal of the Demands, and the passing of the dates upon which each of the dismissal orders in each of the Litigations become Final.

Settling Shareholders directly, or by Settling Shareholders or any other L Brands Stockholder derivatively on behalf of L Brands in any court, tribunal, forum, or proceeding, arising out of, relating to, based upon, or involving, directly or indirectly, any of the facts, allegations, practices, events, claims, disclosures, non-disclosures, occurrences, representations, statements, matters, transactions, conduct, actions, failures to act, omissions, or circumstances that were alleged or referred to in any of the complaints filed in the Litigations or in the Demands in the Settling Matters.[2] In addition, upon the Effective Date, L Brands acting directly, the Settling Shareholders acting directly and derivatively on behalf of L Brands, and any other L Brands Stockholders acting derivatively on behalf of L Brands, shall be forever barred and enjoined from asserting, commencing, instituting, or prosecuting any of the Released Stockholder Claims against any Released Defendant Person.

33. Each of the Individual Defendants, the Special Committee, and L Brands shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, discharged, and dismissed with prejudice the Released Defendant Claims (including Unknown Claims) against the Released Stockholder Persons, which as detailed in the Stipulation, means any and all claims, rights, demands, obligations, controversies, debts, disputes, damages, losses, causes of action, issues, liabilities, and charges of any kind or nature whatsoever, whether in law or equity, including both known claims and Unknown Claims, suspected or unsuspected, accrued or unaccrued, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, whether arising under federal or state statutory or common law, or any other law, rule, or regulation, whether foreign or domestic, that Defendants have or could have asserted against the Released Stockholder Persons or their counsel, arising out of, relating to, based upon, or involving, directly or indirectly, the institution, prosecution, or settlement of the claims asserted against Defendants.[3] In addition, upon the Effective Date, each of the Individual Defendants, the Special Committee, and L Brands shall be forever barred and enjoined from asserting any Released Defendant Claims against any Released Stockholder Person.

34. By Order of the Court, pending final determination of whether the Settlement is approved, the Settling Shareholders and all other L Brands Stockholders are barred and enjoined from asserting, commencing, instituting, or prosecuting any of the Released Stockholder Claims against any of the Released Defendant Persons.

35. **THE ABOVE DESCRIPTION OF THE PROPOSED RELEASES IS A SUMMARY.** The complete terms, including the definitions of the Effective Date, Released Defendant Claims, Released Defendant persons, Released Stockholder Claims, Released Stockholder Persons, and Unknown Claims, are set forth in the Stipulation,

---

[2] The Released Stockholder Claims shall not include (1) any claims relating to the enforcement of the Settlement or this Stipulation, (2) any claims that arise out of or are based upon any conduct of the Released Defendant Persons after the Effective Date, or (3) any direct claims of any L Brands Stockholder other than Settling Shareholders, including without limitation claims asserted under the federal securities laws.

[3] The Released Defendant Claims shall not include (1) any claims relating to the enforcement of the Settlement or this Stipulation, (2) any claims by the Defendants relating to insurance coverage or the right to indemnification, or (3) any claims that arise out of or are based upon any conduct of the Released Stockholder Persons after the Effective Date.

which is available on Bath & Body Works' and Victoria's Secret's respective investor relations websites at [_____] and [_____] and on Settling Shareholders' Counsel's websites at [_____].

## VI.   SETTLING SHAREHOLDERS COUNSEL'S APPLICATION FOR A FEE AND EXPENSE AWARD

36.    After the Parties had agreed on all other material terms of the Settlement, the Parties separately negotiated in good faith to attempt to reach agreement concerning the amount of the Fee and Expense Award for Settling Shareholders' Counsel.  In light of benefits produced for L Brands by Settling Shareholders and Settling Shareholders' Counsel in connection with the Settlement, the Litigations, the Demands, and the 220 Action, L Brands has agreed, subject to approval of the Court, that Settling Shareholders' Counsel are entitled to a fee and expense award of $21 million.  Pursuant to the agreement, Settling Shareholders' Counsel intend to seek an aggregate award of attorney's fees and expenses from the Court of no more than $21 million, subject to approval by the Court ("Fee and Expense Award").  Settling Shareholders Rudi, Detroit, Lambrecht, and Giarratano may seek a service award not to exceed $10,000 for each such Settling Shareholder as part of the Fee and Expense Award.  If awarded by the Court, each such service award shall be paid out of any Fee and Expense Award awarded to counsel representing that Settling Shareholder.

37.    Settling Shareholders and Settling Shareholders' Counsel agree not to request that any greater aggregate amount be awarded to Settling Shareholders' Counsel by the Court in connection with the Settling Matters and L Brands and the Individual Defendants agree not to oppose the requested Fee and Expense Award so long as it does not exceed $21 million.

38.    Bath & Body Works shall pay or Defendants shall cause their insurers to pay the full amount of any Fee and Expense Award awarded by the Court.  L Brands Stockholders are not personally liable for any such fees or expenses.

39.    The Fee and Expense Award is subject to approval by the Court at the Settlement Hearing and any change to the negotiated amount of the Fee and Expense Award will not otherwise affect the Finality of the Settlement.  The Court's decision granting, in whole or in part, the application by Settling Shareholders' Counsel for a Fee and Expense Award is not a condition of the Stipulation or to entry of the Judgment.  The request by Settling Shareholders' Counsel for a Fee and Expense Award is to be considered by the Court separately from the Court's consideration of the question whether the Settlement is fair, reasonable, adequate, and in the best interests of L Brands and L Brands Stockholders.

## VII.   SETTLEMENT HEARING AND RIGHT TO APPEAR AND OBJECT

40.    The Court has scheduled a Settlement Hearing, to be held on _____, 2021, at _____ _.m., either in person at the United States District Court for the Southern District of Ohio, 85 Marconi Boulevard, Columbus, Ohio 43214 (the "Settlement Hearing"), or by telephone or video conference (in the discretion of the Court) to consider whether the Judgment, substantially in the form of Exhibit D to the Stipulation,

10

should be entered: (i) approving the terms of the Settlement as fair, reasonable, and adequate and in the best interests of L Brands and L Brands' Stockholders; (ii) dismissing with prejudice the Ohio Action against Defendants pursuant to the terms of the Stipulation; and (iii) ruling upon Settling Shareholders Counsel's application for a Fee and Expense Award.

41. **Please Note:** The date and time of the Settlement Hearing may change without further written notice to Current Company Stockholders. In addition, the COVID-19 pandemic is a fluid situation that creates the possibility that the Court may decide to conduct the Settlement Hearing by video or telephonic conference, or otherwise allow Current Company Stockholders to appear at the hearing by video or telephone, without further written notice. **In order to determine whether the date and time of the Settlement Hearing have changed, or whether Current Company Stockholders must or may participate by telephone or video, it is important that you monitor the Court's docket and Bath & Body Works' and Victoria's Secret's respective investor relations websites at [_____] and [_____], before making any plans to attend the Settlement Hearing. Any updates regarding the Settlement Hearing, including any changes to the date or time of the hearing or updates regarding in-person or remote appearances at the hearing, will be posted to those websites. If the Court requires or allows Current Company Stockholders to participate in the Settlement Hearing by telephone or video conference, the information for accessing the telephone or video conference will be posted to Bath & Body Works' and Victoria's Secret's respective investor relations websites at [_____] and [_____].**

42. Any Person who held L Brands stock as of July 29, 2021 and continues to hold common stock either in Bath & Body Works or Victoria's Secret as of the date of the Settlement Hearing (Current Company Stockholder) may appear at the Settlement Hearing to show cause why the proposed Settlement should not be approved; why the Judgment should not be entered thereon; or why Settling Shareholders' Counsel's application for the Fee and Expense Award should not be granted; *provided, however*, that no such Person shall be heard or entitled to contest the approval of the terms and conditions of the proposed Settlement, the Judgment to be entered approving the same, or the application for the Fee and Expense Award, unless such Person has filed with the Clerk of the United States District Court for the Southern District of Ohio, 85 Marconi Boulevard, Columbus, Ohio 43215, and served (by hand, first-class mail or express service) on Settling Shareholders' Counsel and counsel for the Special Committee of the Board, a written and signed notice of objection that includes: (i) the objector's name, address, and telephone number (and if represented, that of his, her, or its counsel), along with a representation as to whether the objector intends to appear at the Settlement Hearing; (ii) proof that the objector owned shares of L Brands common stock as of July 29, 2021, and continues to hold common stock either in Bath & Body Works or Victoria's Secret; (iii) a statement of the objections to any matters before the Court, the grounds for the objections or the reasons for the objector's desiring to appear and be heard, as well as all documents or writings the objector desires the Court to consider, including any legal and evidentiary support; and (iv) if the objector has indicated that he, she or it intends to appear at the Settlement Hearing, the identities of any witnesses the objector may call to testify and any exhibits the objector intends to introduce into evidence at the Settlement Hearing. Any such

objection must be filed with the Court and received by the below-noted counsel by no later than twenty-one (21) calendar days prior to the Settlement Hearing.

**Office of the Clerk**
Joseph P. Kinneary U.S. Courthouse
Room 121
85 Marconi Boulevard
Columbus, Ohio 43215

**Counsel for Plaintiff Rudi and Detroit Police & Fire**
Geoffrey M. Johnson, Esq.
Scott + Scott Attorneys at Law LLP
12434 Cedar Road, Suite 12
Cleveland Heights, OH 44106

**Counsel for Oregon**

Julie G. Reiser, Esq.
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave NW, Suite 500
Washington, DC 20005

Mark Lebovitch, Esq.
Bernstein Litowitz Berger & Grossmann LLP
1251 Avenue of the Americas
New York, NY 10020

**Counsel for Giarratano and Kualii**
Manisha M. Sheth, Esq.
Quinn Emanuel Urquhart & Sullivan LLP
51 Madison Avenue, 22nd Floor,
New York, New York 10010

Stanley D. Bernstein, Esq.
Bernstein Liebhard LLP
10 East 40th Street
New York, New York 10016

**Counsel for Lambrecht**
P. Bradford deLeeuw, Esq.
deLeeuw Law LLC
1301 Walnut Green Road
Wilmington, Delaware 19807

Richard D. Greenfield, Esq.
Greenfield & Goodman LLC
1905 Spruce Street
Philadelphia, PA 19103

12

**Counsel for the Special Committee of the Board, acting on behalf of L Brands**
William D. Savitt
Wachtell, Lipton, Rosen & Katz
51 W. 52nd Street
New York, NY 10019

Robert W. Trafford
Porter, Wright, Morris & Arthur
41 South High Street
Suites 2800 - 3200
Columbus, OH 43215

43.     Documentation establishing ownership of L Brands, Bath & Body Works, and/or Victoria's Secret common stock must consist of copies of monthly brokerage account statements, or an authorized statement from the objector's broker containing the information found in an account statement.

44.     Unless the Court otherwise directs, no Person shall be entitled to object to the approval of the Settlement, the Judgment to be entered approving the Settlement, the application for a Fee and Expense Award, or otherwise be heard, except by serving and filing a written objection and supporting papers as prescribed above.  Any Person who fails to object in the manner described above shall be deemed to have waived the right to object to any aspect of the proposed Settlement and the Fee and Expense Award (including any right of appeal or collateral attack); be forever barred and foreclosed from objecting to the fairness, reasonableness, or adequacy of the Settlement, the Judgment to be entered approving the Settlement, or the Fee and Expense Award; and be deemed to have waived and forever barred and foreclosed from being heard, in this or any other proceeding with respect to any matters concerning the Settlement or the Fee and Expense Award.

## VIII.     ORDER AND FINAL JUDGMENT OF THE COURT

45.     The Parties will jointly request at the Settlement Hearing that the Court determine and enter the Judgment concluding that the Settlement is fair, reasonable, adequate, and in the best interests of L Brands and L Brands Stockholders.  The Judgment shall, among other things:

      a.  Determine that the requirements of Rule 23.1 of the Federal Rules of Civil Procedure and due process have been satisfied in connection with the Notice;

      b.  Approve the Settlement as fair, reasonable, adequate, and in the best interests of L Brands and L Brands Stockholders;

      c.  Dismiss the Ohio Action with prejudice on the merits, as against any and all Defendants, without costs except as provided in the Stipulation, and release the Released Claims; and

        d.   Determine the Settling Shareholders' Counsel's application for the Fee and Expense Award.

## IX.    __SCOPE OF THIS NOTICE__

46.     This Notice does not purport to be a comprehensive description of the Settling Matters, the terms of the Settlement, or the Settlement Hearing. For the full details of the Ohio Action and the Settling Matters, L Brands Stockholders may inspect the pleadings, the Stipulation, and the orders entered by the Court and are referred to the office of the Clerk of Court, 85 Marconi Boulevard, Columbus, Ohio 43215. The Stipulation is also available on Bath & Body Works' and Victoria's Secret's respective investor relations websites at [_____] and [_____].

47.     If you have questions regarding the Settlement, you may call the following counsel for the Settling Shareholders: Geoffrey M. Johnson, Esq., Scott + Scott Attorneys at Law LLP, 12434 Cedar Road, Suite 12, Cleveland Heights, OH 44106, 1-800-404-7770, scottcases@scott-scott.com; Julie G. Reiser, Esq., Cohen Milstein Sellers & Toll PLLC, 1100 New York Ave NW, Suite 500, Washington, DC 20005, 1-202-408-4600, jreiser@cohenmilstein.com; and Manisha M. Sheth, Esq., Quinn Emanuel, Urquhart & Sullivan LLP, 51 Madison Avenue, 22nd Floor, New York, New York 10010, 1-212-849 7441, manishasheth@quinnemanuel.com.

                         Form and substance approved by Court Order
                         Dated _____ ___, 2021

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| MILTON RUDI, | |
| Plaintiff, | |
| vs. | Case No. 2:20-cv-3068 |
| LESLIE WEXNER, et al., | Judge Michael H. Watson |
| Defendants, | Magistrate Judge Elizabeth P. Deavers |
| and | |
| L BRANDS, INC., | |
| Nominal Defendant. | |

**SUMMARY NOTICE OF PENDENCY AND PROPOSED SETTLEMENT**
**OF DERIVATIVE ACTIONS**

**TO: ALL PERSONS AND ENTITIES WHO HELD L BRANDS, INC. COMMON STOCK AS OF JULY 29, 2021 AND WHO CONTINUE TO HOLD COMMON STOCK EITHER IN BATH & BODY WORKS, INC. OR VICTORIA'S SECRET & CO. AS OF THE CLOSE OF TRADING ON _____, 2021.**

**PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY.  YOUR RIGHTS WILL BE AFFECTED BY THE ACTIONS.**

YOU ARE HEREBY NOTIFIED that this Summary Notice relates to a proposed settlement ("Settlement") of the following derivative actions: *Rudi* v. *Wexner, et al.*, Case Non 2:20-cv-3068 (S.D. Ohio) ("Ohio Action") and *Lambrecht* v. *Wexner, et al.*, C.A. No. 2021-0029-JTL (Del. Ch.) ("Delaware Action") (together, the "Litigations"), as well as litigation demands and demands to inspect the Company's books and records under Section 220 of the Delaware General Corporation Law made by L Brands, Inc. stockholders (together, the "Settling Matters").  If the Court approves the proposed Settlement, you will be forever barred from contesting the fairness, adequacy, and reasonableness of the proposed Settlement and from pursuing the Released Claims.

YOU ARE HEREBY NOTIFIED that the terms and conditions of the proposed Settlement are set out in a Stipulation and Agreement of Settlement entered into on July 29, 2021 ("Stipulation").

A more detailed description of the Settling Matters and the Settlement are set forth in the Stipulation as well as the full Notice of Pendency and Proposed Settlement of Derivative Actions ("Notice"), both of which are publicly available for review on the Bath & Body Works, Inc ("Bath & Body Works") and Victoria's Secret & Co. ("Victoria's Secret") investor relations websites at [_____] and [_____] and on Settling Shareholders' Counsel's websites at [_____]. All capitalized terms used in this Summary Notice that are not otherwise defined herein have the meanings provided in the Stipulation and/or Notice.

In consideration of the Settlement and the releases provided therein, and subject to the terms and conditions of the Stipulation, L Brands (which, as defined in the Stipulation, includes its successors Bath & Body Works and Victoria's Secret) has agreed to implement and maintain certain Management & Governance Measures, including, among other things: (i) supplementing the existing Code of Conduct with standalone policies on (a) sexual harassment, (b) reporting, and (c) anti-retaliation; (ii) strengthening and clarifying the process for reporting and investigating claims of sexual harassment (including hostile work environment), gender discrimination, and retaliation related to the same (the "Subject Conduct"); (iii) conforming the Company's policy regarding nondisclosure agreements to be consistent with New York law and not enforcing provisions of previously-entered agreements that prohibit a complainant from discussing the underlying facts and circumstances of a sexual harassment claim; (iv) exempting claims of Subject Conduct from mandatory arbitration provisions; (v) instituting new and enhanced employee and Board training regarding harassment and workplace civility; (vi) requiring contractor compliance with L Brands policies; (vii) collecting and evaluating data related to harassment and retaliation; (viii) maintaining a Diversity, Equity, & Inclusion ("DEI") Council; (ix) retaining a DEI consultant; (x) updating Board committee charters to reflect oversight and responsibility over the subject matter of the reforms; and (xi) committing to funding of $90 million for the Management & Governance Measures over the course of at least five (5) years, as described in the Stipulation.

A hearing will be held on _____, 2021 at ____ _.m., either in person at the United States District Court for the Southern District of Ohio, 85 Marconi Boulevard, Columbus, Ohio 43214 (the "Settlement Hearing"), or by telephone or video conference (in the discretion of the Court), to consider whether the Judgment, substantially in the form of Exhibit D to the Stipulation, should be entered: (i) finally approving the terms of the Settlement as fair, reasonable, and adequate and in the best interests of L Brands (which, as defined in the Stipulation, includes its successors Bath & Body Works and Victoria's Secret) and L Brands' Stockholders; (ii) dismissing with prejudice the Ohio Action against Defendants pursuant to the terms of the Stipulation; and (iii) ruling upon Settling Shareholders Counsel's application for a Fee and Expense Award. Any updates regarding the Settlement Hearing, including any changes to the date or time of the hearing or updates regarding in-person or remote appearances at the hearing, will be posted to Bath & Body Works' and Victoria's Secret's respective investor relations websites at [_____] and [_____].

If you owned L Brands common stock as of July 29, 2021 and continue to hold common stock either in Bath & Body Works or Victoria's Secret as of the date of the Settlement Hearing, you may, if you wish, appear at the Settlement Hearing to show cause

why the proposed Settlement, Judgment, and Settling Shareholders' Counsel's application for the Fee and Expense Award should not be approved and entered. Any such objections **must** be filed with the Court and served on counsel for the Settling Shareholders' Counsel and L Brands' counsel **no later than _____, 2021**, in accordance with the instructions set forth in the Notice.

PLEASE NOTE: Because the Settlement involves the resolution of stockholder derivative actions, which were brought on behalf of and for the benefit of the Company, the benefits from the Settlement will go to L Brands (which, as defined in the Stipulation, includes its successors Bath & Body Works and Victoria's Secret). Individual L Brands Stockholders will not receive any direct payment from the Settlement. **ACCORDINGLY, THERE IS NO PROOF OF CLAIM FORM FOR STOCKHOLDERS TO SUBMIT IN CONNECTION WITH THIS SETTLEMENT.**

**STOCKHOLDERS ARE NOT REQUIRED TO TAKE ANY ACTION IN RESPONSE TO THIS SUMMARY NOTICE.**

Questions regarding this Summary Notice, the Settling Matters, and the Settlement should be made to the following counsel for Settling Shareholders:

| | |
|---|---|
| Geoffrey M. Johnson, Esq. | Julie G. Reiser, Esq. |
| Scott + Scott Attorneys at Law LLP | Cohen Milstein Sellers & Toll PLLC |
| 12434 Cedar Road, Suite 12 | 1100 New York Ave NW, Suite 500 |
| Cleveland Heights, OH 44106 | Washington, DC 20005 |
| 1-800-404-7770 | 1-202-408-4600 |
| scottcases@scott-scott.com | jreiser@cohenmilstein.com |

Manisha M. Sheth, Esq.
Quinn Emanuel Urquhart & Sullivan LLP
51 Madison Avenue, 22nd Floor,
New York, New York 10010
1-212-849 7441
manishasheth@quinnemanuel.com

By Order of the Court

3

Exhibit C to Stipulation and Agreement of Settlement

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

MILTON RUDI,

     Plaintiff,

  vs.

LESLIE WEXNER, et al.,

     Defendants,

  and

L BRANDS, INC.,

     Nominal Defendant.

Case No. 2:20-cv-3068

Judge Michael H. Watson

Magistrate Judge Elizabeth P. Deavers

## [PROPOSED] ORDER AND FINAL JUDGMENT

WHEREAS, a stockholder derivative litigation is pending in this Court entitled *Rudi* v. *Wexner, et al.*, Case No. 2:20-cv-3068 ("Ohio Action");

WHEREAS, a stockholder derivative litigation is pending in the Court of Chancery of the State of Delaware entitled *Lambrecht* v. *Wexner, et al.*, C.A. No. 2021-0029-JTL (Del. Ch.) ("Delaware Action") (together with the Ohio Action, the "Litigations");

WHEREAS, L Brands, Inc. ("L Brands" or the "Company") stockholders, including the Oregon Department of Justice, as chief legal advisor to the Oregon State Treasurer, on behalf of the Oregon Public Employee Retirement Fund ("Oregon"), John Giarratano ("Giarratano"), and Maryann Kualii ("Kualii"), have made demands to inspect the Company's books and records pursuant to Section 220 of the Delaware General Corporation Law ("Section 220") and Giarratano commenced a Section 220 action in the

1

Court of Chancery of the State of Delaware captioned *John Giarratano* v. *L Brands, Inc.*, Case No. 2020-0437-JRS (Del. Ch.) on June 4, 2020, which was voluntarily dismissed by stipulation on October 29, 2020;

WHEREAS, L Brands stockholders, including Milton Rudi ("Rudi" or "Plaintiff"), Nancy A. Lambrecht, Co-Trustee of the Amanda Greenfield 2012 Irrevocable Trust ("Lambrecht"), and the Detroit Police and Fire Retirement System ("Detroit"), have made litigation demands upon the L Brands Board of Directors;

WHEREAS, (1) Oregon; (2) Rudi; (3) Detroit; (4) Lambrecht; (5) Giarratano; and (6) Kualii (collectively with Rudi, Oregon, Detroit, Lambrecht, and Giarratano, the "Settling Shareholders"); (7) current and former members of the Board of Directors of L Brands, Inc. (the "Board"): Leslie H. Wexner, Abigail S. Wexner, Allan R. Tessler, Gordon Gee, Raymond Zimmerman, Patricia S. Bellinger, Donna A. James, Michael G. Morris, Sarah E. Nash, Robert H. Schottenstein, Anne Sheehan, Stephen D. Steinour, David T. Kollat, and Dennis S. Hersch (collectively, the "Board Members"); (8) former officers of L Brands: Leslie H. Wexner and Edward Razek (the "Officers," and, together with the Board Members, the "Individual Defendants"); (9) nominal defendant L Brands (together with the Individual Defendants, the "Defendants"); and (10) the Special Committee of the L Brands Board (the "Special Committee," and together with the Settling Shareholders and the Defendants, the "Parties") have entered into the Stipulation and Agreement of Settlement (the "Stipulation") dated July 29, 2021, which sets forth the terms and conditions of the proposed settlement (the "Settlement") that provides for a complete dismissal with prejudice of the claims asserted in the Litigations, withdrawal of the Demands, and the release of the Released Claims on the terms and conditions set forth therein, subject to the approval of this Court;

2

WHEREAS, by Order dated _____ 2021, ("Preliminary Approval Order"), this Court: (i) preliminarily approved the Settlement; (ii) ordered that notice of the proposed Settlement be provided to Current Company Stockholders; (iii) provided any Person who held L Brands stock as of July 29, 2021 and continued to hold common stock either in Bath & Body Works, Inc. ("Bath & Body Works") or Victoria's Secret & Co. ("Victoria's Secret") as of the date of the Settlement Hearing with the opportunity to object to the proposed Settlement and/or Settling Shareholders' Counsel's application for a Fee and Expense Award; and (iv) scheduled a hearing regarding final approval of the Settlement ("Settlement Hearing");

WHEREAS, on _____, 2021, after full briefing, the Court held the Settlement Hearing to consider, among other things, whether Judgment should be entered: (i) finally approving the terms of the Settlement as fair, reasonable, and adequate and in the best interests of L Brands (which, as defined in the Stipulation, includes its successors Bath & Body Works and Victoria's Secret) and L Brands' Stockholders; (ii) dismissing with prejudice the Ohio Action against Defendants pursuant to the terms of the Stipulation; and (iii) ruling upon Settling Shareholders Counsel's application for a Fee and Expense Award;

Reasonable and adequate notice having been given to Current Company Stockholders as required in the Preliminary Approval Order, and the Court having considered all of the papers filed and proceedings had in this matter and otherwise being fully informed and good cause appearing therefor, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1.     This Judgment incorporates by reference the definitions in the Stipulation and, unless otherwise defined in this Judgment, all capitalized terms used in this Judgment shall have the same meaning as set forth in the Stipulation.

2.     The Court has jurisdiction over the subject matter of the Actions, including all matters necessary to effectuate the Settlement, and over all Parties.

3.     The Court finds that: (a) the publication of the Summary Notice in Investor's Business Daily, the attachment of the Notice to the Bath & Body Works and Victoria's Secret Form 8-Ks filed with the SEC, and the posting of the Notice and Stipulation on Bath & Body Works' and Victoria's Secret's respective investor relations websites and on Settling Shareholders' Counsel's websites were implemented in accordance with the Preliminary Approval Order and (b) the method of providing notice of the Settlement and the Settlement Hearing set forth in the Preliminary Approval Order: (i) constitutes notice that is reasonably calculated, under the circumstances, to apprise Current Company Stockholders of the pendency of the Actions, of the effect of the proposed Settlement (including the releases to be provided thereunder), of their right to object to the Settlement and/or Settling Shareholders' Counsel's application for a Fee and Expense Award, and of their right to appear at the Settlement Hearing; (ii) constitutes due, adequate, and sufficient notice to all Persons entitled to receive notice of the proposed Settlement; and (iii) fully satisfies the requirements of Rule 23.1(c) of the Federal Rules of Civil Procedure and the requirements of due process.

4.     The Court finds that the Settlement set forth in the Stipulation is fair, reasonable, and adequate as to each of the Parties, and hereby finally approves the Settlement in all respects, finds that the Settlement set forth in the Stipulation provides substantial benefits to the Settling Shareholders, to L Brands (which, as defined in the

Stipulation, includes its successors Bath & Body Works and Victoria's Secret) and to L Brands Stockholders, and orders the Parties to perform its terms to the extent the Parties have not already done so.

5.     The Ohio Action, all claims contained therein, and the Released Claims, are hereby ordered compromised, settled, released, discharged and dismissed on the merits and with prejudice by virtue of the proceedings in the Ohio Action and this Judgment. The Parties are each to bear their own costs, except as otherwise provided in the Stipulation and in connection with any Fee and Expense Award approved by the Court.

6.     The terms of the Stipulation and of this Judgment shall be forever binding on the Parties and all L Brands Stockholders, as well as their respective successors and assigns. Any L Brands Stockholder who has not timely submitted any actual or potential objection to the Settlement in the manner provided in the Notice is deemed to have waived the right to object to any aspect of the proposed Settlement and the Fee and Expense Award (including any right of appeal or collateral attack); is forever barred and foreclosed from objecting to the fairness, reasonableness, or adequacy of the Settlement, the Judgment to be entered approving the Settlement, or the Fee and Expense Award; and is deemed to have waived and forever barred and foreclosed from being heard, in this or any other proceeding with respect to any matters concerning the Settlement or the Fee and Expense Award.

7.     The Court orders that the releases set forth in the Stipulation shall be effective as of the Effective Date. Accordingly, the Court orders that:

a.     Upon the Effective Date, L Brands acting directly, Settling Shareholders acting directly and derivatively on behalf of L Brands, and any other L Brands Stockholder acting derivatively on behalf of L Brands, shall be deemed

EXHIBIT D TO STIPULATION AND AGREEMENT OF SETTLEMENT

to have, and by operation of this Judgment shall have, fully, finally, and forever released, relinquished, discharged, and dismissed with prejudice the Released Stockholder Claims (including Unknown Claims) against the Released Defendant Persons and shall be forever barred and enjoined from asserting, commencing, instituting, or prosecuting any of the Released Stockholder Claims against any Released Defendant Person.

b. Upon the Effective Date, each of the Individual Defendants, the Special Committee, and L Brands shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever released, relinquished, discharged, and dismissed with prejudice the Released Defendant Claims (including Unknown Claims) against the Released Stockholder Persons, and shall be forever barred and enjoined from asserting any Released Defendant Claims against any Released Stockholder Person.

c. "Released Stockholder Claims" means any and all claims, rights, demands, obligations, controversies, debts, disputes, damages, losses, actions, causes of action, issues, liabilities, and charges of any kind or nature whatsoever, whether in law or equity, including both known claims and Unknown Claims, suspected or unsuspected, accrued or unaccrued, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, whether arising under federal or state statutory or common law, or any other law, rule, or regulation, whether foreign or domestic, that (i) were asserted in any of the complaints filed in the Litigations or in the Demands in the Settling Matters, or (ii) could have been asserted by L Brands directly, by Settling Shareholders directly, or by Settling Shareholders or any other L Brands Stockholder derivatively on

behalf of L Brands in any court, tribunal, forum, or proceeding, arising out of, relating to, based upon, or involving, directly or indirectly, any of the facts, allegations, practices, events, claims, disclosures, non-disclosures, occurrences, representations, statements, matters, transactions, conduct, actions, failures to act, omissions, or circumstances that were alleged or referred to in any of the complaints filed in the Litigations or in the Demands in the Settling Matters; provided, however, that the Released Stockholder Claims shall not include (1) any claims relating to the enforcement of the Settlement or this Stipulation, (2) any claims that arise out of or are based upon any conduct of the Released Defendant Persons after the Effective Date, or (3) any direct claims of any L Brands Stockholder other than Settling Shareholders, including without limitation claims asserted under the federal securities laws.

d.      "Released Defendant Persons" means, collectively, each and all of Individual Defendants, L Brands (which for the avoidance of doubt includes Bath & Body Works and Victoria's Secret), and the Special Committee, and their respective attorneys, and each and all of their respective Related Persons.

e.      "Related Persons" means past or present family members, spouses, heirs, trusts, trustees, executors, estates, administrators, beneficiaries, distributees, foundations, agents, employees, fiduciaries, partners, partnerships, general or limited partners or partnerships, joint ventures, member firms, limited liability companies, corporations, parents, subsidiaries, divisions, affiliates, associated entities, stockholders, principals, officers, directors, managing directors, members, managing members, managing agents, representatives, predecessors, predecessors-in-interest, successors, successors-in-interest, assigns, financial or

investment advisors, advisors, consultants, investment bankers, entities providing any fairness opinion, underwriters, brokers, dealers, lenders, commercial bankers, attorneys, personal or legal representatives, accountants, insurers, co-insurers, reinsurers, and associates.

      f.     "Unknown Claims" means any and all Released Claims that any of the Parties or any L Brands Stockholder does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, including claims which, if known by him, her, or it, might have affected his, her, or its decision to settle or the terms of his, her, or its settlement with and releases provided to the other Parties, or might have affected his, her, or its decision not to object to this Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, the Parties shall expressly waive, and, with respect to Released Stockholder Claims that could have been asserted derivatively on behalf of the Company, all other L Brands Stockholders by operation of the Judgment shall have expressly waived, the provisions, rights, and benefits of California Civil Code § 1542, or any other law of the United States or any state or territory of the United States, or principle of common law that is similar, comparable, or equivalent to Section 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Parties and each L Brands Stockholder may hereafter discover facts in addition to or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of the Released Claims, known or

unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity, but the Parties and each other L Brands Stockholder derivatively on behalf of the Company shall expressly, fully, finally and forever settle and release, and upon the Effective Date and by operation of the Judgment shall have settled and released, fully, finally, and forever, any and all Released Claims as applicable without regard to the subsequent discovery or existence of such different or additional facts. The Parties acknowledge, and the L Brands Stockholders shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of the Settlement of which this release is a part.

g. "Released Defendant Claims" means any and all claims, rights, demands, obligations, controversies, debts, disputes, damages, losses, causes of action, issues, liabilities, and charges of any kind or nature whatsoever, whether in law or equity, including both known claims and Unknown Claims, suspected or unsuspected, accrued or unaccrued, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, whether arising under federal or state statutory or common law, or any other law, rule, or regulation, whether foreign or domestic, that Defendants have or could have asserted against the Released Stockholder Persons or their counsel, arising out of, relating to, based upon, or involving, directly or indirectly, the institution, prosecution, or settlement of the claims asserted against Defendants; provided, however, that the Released Defendant Claims shall not include (1) any claims relating to the enforcement of the Settlement or this Stipulation, (2) any claims by the Defendants relating to

9

insurance coverage or the right to indemnification, or (3) any claims that arise out of or are based upon any conduct of the Released Stockholder Persons after the Effective Date.

h. "Released Stockholder Persons" means each and all of the Settling Shareholders and their respective attorneys, and each and all of their respective Related Persons.

i. "Released Persons" means, collectively, the Released Defendant Persons and the Released Stockholder Persons. "Released Person" means, individually, any of the Released Persons.

8. Neither this Judgment, nor the Stipulation (including any exhibits attached thereto), nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (i) is or may be deemed to be or may be offered, attempted to be offered, or used or referred to in any way by the Parties as a presumption, a concession, an admission, or evidence of any fault, wrongdoing, or liability of any of the Parties or of the validity of any Released Claims; or (ii) is or may be deemed to be or may be used as a presumption, concession, admission, or evidence of any liability, fault, or omission of any of the Released Persons in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal. Neither this Judgment, nor the Stipulation, nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement, shall be admissible in any proceeding for any purpose, except to enforce the terms of the Settlement, and except that the Released Persons may file the Stipulation and/or this Judgment in any action or proceeding that may be brought against them to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, full faith and credit, release, standing,

10

good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

9.      Settling Stockholders' Counsel are hereby awarded a Fee & Expense Award in the amount of $_____, which amount the Court finds to be fair and reasonable and which shall be paid to Settling Stockholders' Counsel in accordance with the terms of the Stipulation.  Settling Shareholders Rudi, Detroit, Lambrecht, and Giarratano are each hereby awarded service awards in the amount of $_____, which the Court finds to be fair and reasonable.  Each such service award shall be paid out of the Fee and Expense Award allocated to such Settling Shareholders' counsel in accordance with the terms of the Stipulation.

10.      Without further approval from the Court, the Parties are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto, to effectuate the Settlement that:  (i) are not materially inconsistent with this Judgment; and (ii) do not materially limit the rights of L Brands (and its successors Bath & Body Works and Victoria's Secret) or L Brands Stockholders in connection with the Settlement.  Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any provisions of the Settlement.

11.      The Court retains jurisdiction to consider any resolve any disputes that may arise in connection with any Modification (as defined in the Stipulation) and with respect to the interpretation, implementation, and enforcement of the terms of the Stipulation and implementation and enforcement of the Settlement.

12.      This Judgment is a final, appealable judgment and shall be entered forthwith by the Clerk in accordance with Rule 58 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED this _____ day of _____, 2021.


_____
MICHAL H. WATSON
UNITED STATES DISTRICT JUDGE

# EXHIBIT E

## Management & Governance Measures

1. The Company undertakes to implement these Management and Governance Measures (the "Measures") within six months of approval of the settlement in this matter (the "Settlement"), except for the measures related to surveys and data collection, as set forth below, which the Company undertakes to implement within one year of the Settlement. The Company further agrees to keep all measures in place for five years from approval of the Settlement (the "Settlement Period").

2. The Company agrees that, in the event of any transaction, including a sale, spin-off, or merger, of any part of its business affected by the Measures during the Settlement Period, the resulting or acquiring company shall have the obligation to maintain the Measures at the sold or spun-off entity(ies). In addition, the Company agrees to include in any agreement(s) governing such transaction a provision that binds the resulting or acquiring company to the Measures.

## Company Values

3. The Company shall amend its Values as follows, which amendments may be subject to amplification and/or addition during the Settlement Period:

   a. Change "Inclusion makes us stronger" value to "Diversity, Equity & Inclusion Make Us Stronger."

   b. In the accompanying description of that value, include the following:

      i. "We will integrate Diversity, Equity & Inclusion principles into every level and aspect of our business."

      ii. "We will treat everyone respectfully and fairly, and provide and foster an environment where everyone feels safe and empowered to be successful."

      iii. "We do not tolerate discrimination of any kind, harassment, or bullying or other abusive behavior in the workplace. We have no tolerance for retaliation of any kind."

   c. Make clear that the advancement of diversity, equity, and inclusion is a performance expectation for all managerial employees.

## Dispute Resolution

4. The Company will conform its policy regarding nondisclosure agreements to be consistent with New York law, as it exists as of the date of the Settlement.

5.  To the extent an agreement that pre-dates this Settlement contains a provision prohibiting a complainant from discussing the underlying facts and circumstances of a sexual harassment claim, the Company will not enforce that provision.

6.  The amount of any settlement subject to the revised nondisclosure policy shall not in any way be impacted by or dependent on the complainant's request for, or willingness to enter into, a nondisclosure agreement.

7.  The Company will exempt claims (the "Subject Claims") of sexual harassment (including hostile work environment), gender discrimination, and retaliation related to the same (the "Subject Conduct") from mandatory arbitration provisions.  Any individual who has asserted such a claim may elect to resolve his or her claim(s) through arbitration.

### Code of Conduct & Other Policy Documents

8.  As a supplement to the existing Code of Conduct, the Company will adopt a standalone Sexual Harassment Policy, to be given to new employees upon hiring and to current employees, and to be made easily accessible on the Company's website and intranet.

9.  The Sexual Harassment Policy will include the following components:

    a.  A definition of sexual harassment, illustrative examples, and an explanation of who is covered by the policy, substantially as set forth in Appendix 1.

    b.  A statement making clear that there is an absolute prohibition on sexual harassment.

    c.  A statement that violation of the Sexual Harassment Policy will result in disciplinary action, including potentially termination of employment.

    d.  A summary and reference to the Company's below-described standalone Reporting Policy.

    e.  A summary and reference to the Company's below-described standalone Anti-Retaliation Policy.

10. As a supplement to the existing Code of Conduct, the Company will adopt a standalone Reporting Policy that informs employees about the process and protections in place for reporting complaints of Subject Conduct, to be given to new employees upon hiring and to current employees, and to be made easily accessible on the Company's website and intranet.  The Reporting Policy shall include, in substance, the points and principles outlined in Appendix 2.

11. As a supplement to the existing Code of Conduct, the Company will adopt a standalone Anti-Retaliation Policy, to be given to new employees upon hiring and to current employees, and to be made easily accessible on the Company's website and intranet.  The Anti-Retaliation Policy will make clear there is an absolute prohibition on retaliation of any kind.  The standalone Anti-Retaliation Policy shall include, in substance, the points and principles contained in Appendix 3.

12. The Company will ensure that the Code of Conduct includes the following provisions:

    a. A statement encouraging employees to do their part to help maintain an equally respectful, inclusive culture at the Company by reporting harassment through one of several flexible avenues established by the Company.

    b. A statement that managers are held to a higher standard of conduct, and that they must observe those higher standards even when off-site.

    c. A reference to and summary of the Company's Sexual Harassment Policy, and a statement that violation of the Company's Sexual Harassment Policy may result in termination of employment.

    d. A reference to and summary of the Company's standalone Reporting Policy.

    e. A reference to and summary of the Company's standalone Anti-Retaliation Policy, and a statement that an employee who engages in any kind of retaliation against any individual who (i) submits a report through any of the Company's channels for reporting or indicates they intend to do so; (ii) provides information regarding a report; or (iii) investigates a report will be subject to discipline up to and including termination and disgorgement of compensation or cancellation of unvested options.

    f. A statement that romantic and/or sexual relationships between Company employees at the level of SVP or above and other employees are prohibited.

    g. A statement that romantic or sexual relationships between any Company employees who have a direct reporting relationship must be disclosed to HR.

    h. A statement of the Company's alcohol policy.

13. The Company will ensure that governing Company policy documents reflect the following:

    a. Any civil complaint, administrative charge, threat of litigation, or settlement involving a Subject Claim against any corporate employee at the level of VP or above must be reported immediately to Ethics & Compliance, the Chief Legal Officer ("CLO"), the Chief Human Resources Officer ("CHRO"), and the below-defined DEI Consultant.

    b. Ethics & Compliance shall make quarterly reports to a dedicated Committee of the Board (the "Board Committee"), namely the Human Capital and Compensation Committee or its equivalent Board Committee, on allegations, investigations, and settlements of Subject Claims.

    c. The CLO and the CHRO shall meet at least annually with the Human Capital and Compensation Committee or its equivalent Board Committee to discuss allegations, investigations, and settlements of Subject Claims.

d.    The Human Capital and Compensation Committee or its equivalent Board Committee, along with the CLO and the CHRO, shall report at least annually to the Board on allegations, investigations, and settlements of Subject Claims.

e.    The CLO shall promptly report to the Chair of the Human Capital and Compensation Committee or its equivalent Board Committee and to the Chair of the Audit Committee regarding any allegation of Subject Conduct (a) involving, or allegedly undertaken with the authority of, a senior manager (i.e., SVP or above); or (b) presenting a material risk to the business of the Company.

f.    The Human Capital and Compensation Committee or its equivalent Board Committee shall review and report to the Board any compensation or severance decisions concerning any senior manager (i.e., SVP or above) found by the Company to have engaged in Subject Conduct.

## **<u>Training</u>**

14.    The Company will retain an independent expert to administer a customized, interactive harassment prevention/workplace civility training for its employees, which includes a bystander intervention training and a reporting component. The training shall:

a.    cover the elements of the Sexual Harassment Policy, the Anti-Retaliation Policy, the Reporting Policy, and the requirement that any employee at the level of manager or above report sexual harassment that they observe;

b.    include an explanation of the investigative process and information regarding the confidentiality of the process;

c.    be mandatory and administered annually to all current employees, with an accompanying verification of understanding and a certification containing an acknowledgement that failure to abide by the Sexual Harassment Policy or the Anti-Retaliation Policy could affect compensation, or result in termination or other adverse action; and

d.    for an employee who does not receive a passing score on the verification of understanding, be administered again.

15.    The Company will also retain an independent expert to administer a customized, interactive harassment prevention and workplace respect/civility program for its directors, executives and managers, with an accompanying verification of understanding and a certification containing an acknowledgement that failure to abide by the Sexual Harassment Policy or the Anti-Retaliation Policy could affect compensation, or result in termination or other adverse action. The training shall, in addition to the requirements set forth in paragraph 14, cover (a) strategies to prevent, recognize, and respond to objectionable conduct; and (b) what to do when reports of Subject Conduct are made.

16.    All Board members shall be required to receive sexual harassment and fiduciary training annually.

17. In consultation with the DEI Consultant, the Company will evaluate and adjust the above harassment training on a periodic basis.

## Contractor Oversight

18. As part of the process of retaining or renewing an agreement with a third party agency or independent contractor involved in a Company photo shoot, the Company will require that:

    a. the agency or contractor certify receipt and acknowledgement of the standalone Sexual Harassment Policy, Anti-Retaliation Policy, and Reporting Policy;

    b. the agency representative or contractor sign the Photo Shoot Procedures form;

    c. any photographer, art director, producer, director, or stylist certify completion of, and verify understanding of, an online sexual harassment training program designed, administered, or approved by the Company;

    d. the agency or contractor certify that it will provide the Company's standalone Sexual Harassment Policy, Anti-Retaliation Policy, and Reporting Policy to its employees or contractors, including models, involved in a Company photo shoot;

    e. the agency or contractor agree that it will bring to the Company's attention any complaint of Subject Conduct against any freelancer or individual involved in a Company photo shoot; and

    f. the agency or contractor agree not to work with any individual who has been found by the Company to have engaged in Subject Conduct, and agrees not to assign to any Company photo shoot an individual who is under investigation by the Company for such conduct.

19. The Company shall disqualify from engagement by the Company any agency or contractor that the Company learns continues to employ or contract with an individual who has been found to violate the Sexual Harassment Policy or the Anti-Retaliation Policy. The Company shall not engage any individual who is under investigation by the Company for violating the Sexual Harassment Policy or the Anti-Retaliation Policy during the pendency of such investigation.

20. The Company will provide a copy of the Reporting Policy to any model hired for a photo shoot.

21. To the extent that any model has made a complaint of Subject Conduct, the Company shall provide, at the model's request, information regarding the timing and amount of payments to the model's agency for that model's services.

## Investigations & Remediation of Allegations

22. The Company, with the assistance of the DEI Consulant, shall ensure the following regarding the investigation of Subject Claims:

a.   Any employees who have responsibility for investigating such claims must receive targeted training and guidance on an annual basis addressing, among other things:

    i.   the importance of care and empathy in interviews of witnesses;

    ii.   the risk, perception, and fear of retaliation associated with such complaints;

    iii.   the importance of maintaining confidentiality to the extent possible, consistent with a thorough and impartial investigation;

    iv.   taking steps to separate an alleged harasser from the complainant during the investigation;

    v.   the investigative steps to be taken, including identifying all potential witnesses and documentary evidence, interviewing witnesses, memorializing those interviews in writing, and reviewing documentary evidence;

    vi.   target timeliness guidelines for the initial response and completion of the investigation; and

    vii.   appropriate use of two-investigator teams.

b.   Promulgation of clear guidelines concerning use of outside counsel to conduct investigations.  Investigations involving Subject Claims against employees at the level of SVP or above shall be conducted by outside counsel.

c.   Promulgation of protocols requiring that:

    i.   at the conclusion of the investigation, investigators check in with the complainant, the accused, and any witnesses and share any determinations as appropriate;

    ii.   HR check in with the complainant between 30 and 45 days following the conclusion of the investigation, unless the complainant opts out;

    iii.   HR monitor the complainant's performance ratings for two years to detect and guard against retaliation; and

    iv.   investigators and other relevant personnel determine at the end of every investigation whether there were any "lessons learned" and, if so, conduct a "lessons learned" review.

d.   Promulgation of record-keeping requirements which include standardized investigation reports for Subject Claims maintained in a centralized database with accessibility restrictions tailored to protect confidentiality.

23. The Company, with the assistance of the DEI Consultant, will ensure the following is implemented regarding remedial action for Subject Conduct:

    a. a well-publicized corrective action matrix that sets forth the kind of discipline that will be imposed for scenarios that are likely to occur, with each action tethered to a form of conduct without regard for seniority or position;

    b. a requirement that written records be kept of disciplinary measures imposed for violation of the Sexual Harassment Policy and the Anti-Retaliation Policy;

    c. a policy that, unless otherwise required by a contract entered into prior to this Settlement, any employee terminated for Subject Conduct shall not receive severance in any form, which policy shall be reflected in future employment contracts;

    d. a policy that, unless otherwise required by a contract entered into prior to this Settlement, any employee who departs the Company while an investigation of a Subject Claim is ongoing shall not receive severance or be allowed to vest stock awards unless the investigation is concluded with a finding of no misconduct;

    e. a policy that an employee who is subject to investigation of a Subject Claim shall be allowed to modify a 10b5-1 plan only after notice is provided to the HCCC and approval is obtained from the CLO, unless the investigation has concluded with a finding of no misconduct;

    f. a provision in Executive Contracts and stock award documents permitting the Company to recoup bonus compensation and other incentive compensation in the event an employee is terminated for Subject Conduct; and

    g. a committee that includes the CLO and the CHRO shall have responsibility for ensuring that these remediation procedures are followed.

### Data Related to Harassment and Retaliation

24. The Company shall administer annually an opinion survey to all employees at the Company's corporate offices that includes questions targeted at understanding whether employees (a) have experienced harassment or discrimination based on race, gender, or sexual orientation, or retaliation for reporting the same, or a hostile work environment; (b) perceive that their supervisors or management tolerate harassment, discrimination, or retaliation; (c) are aware of the Company's Sexual Harassment Policy, Anti-Retaliation Policy, and Reporting Policy, and feel comfortable reporting any instances of discrimination, harassment, retaliation, or other misconduct to management; and (d) believe that the Company encourages employees to speak up about any instances of discrimination, harassment, retaliation, or other misconduct they experience or observe (the "Annual Corporate Survey").

25. The Company shall provide any model who participates in at least three photoshoots for the Company in a year with the opportunity to complete a customized version of the above

"Annual Corporate Survey" that is geared towards models and ensure data derived from their participation in the survey be included in any data reporting.

26.     The Company shall record, track, and analyze all complaints of harassment and discrimination based on race, gender, and sexual orientation, and complaints of retaliation related to the same, received through all reporting avenues, including such information as date, name of reporter, target of complaint, organization, department, positions (of accused and victim), type of conduct, list and summary of all evidence presented, names and summaries of witness testimony, findings, and outcome (including specifics of any discipline or other remedy imposed, and any remedies or accommodations granted the complainant.  Any such data relating to the Subject Claims (the "Complaint Data") shall be made available to the DEI Consulant on a de-identified basis.

27.     As part of its oversight and reporting responsibilities, Ethics & Compliance shall review the Complaint Data to track (a) the number of complaints of Subject Conduct from all reporting channels, broken down by channel; (b) length of time between reporting and closure; (c) number of claims substantiated and not; and (d) categories of discipline imposed in substantiated cases (together, an "Investigations Report").

## Creation of a Diversity, Equity, & Inclusion Council

28.     The Company shall establish a Diversity, Equity & Inclusion ("DEI") Council with the following features and specifications:

   a.     The CEO shall be the Executive Sponsor; the Chief Diversity Officer ("CDO") shall be the Council Lead; and the Steering Committee shall include the CHRO and the CLO or head of Ethics & Compliance.

   b.     The DEI Council shall meet at least quarterly.

   c.     The Council's guiding principles (the "DEI Principles") include:

      i.     achieve a diverse management, workforce, and environment in which all individuals are treated fairly and respectfully, have equal access to opportunities and resources, are equally valued and included, and can contribute fully to the Company's success;

      ii.    provide development that brings awareness to, and educates employees on, diversity, equity and inclusion; and

      iii.   foster a culture that is antiracist, antisexist, and open to everyone despite social differences;  consists of active allies; embraces social change; takes action; is accountable.

   d.     The Council's objectives include:

      i.     enhance training to educate and equip associates to inspire change and live the Company's values;

      ii.     foster an inclusive culture to engage, develop, promote and retain talent;

      iii.    invest in diverse communities that are representative of the Company's customers and employees; and

      iv.    implement an inclusive lens to the Company's external brand presence and communications.

e.     Representatives of the DEI Council shall meet at least twice annually with the Human Capital and Compensation Committee or an equivalent Board Committee, and make recommendations, as appropriate, which the Committee shall consider in good faith.

f.     Representatives of the DEI Council shall report at least once annually to the Board.

g.     The DEI Council shall assist the Company in preparing and publishing to stockholders annually a report discussing the Company's specific DEI objectives, progress in meeting those goals, and accompanying metrics, including EEO-1 data (the "DEI Report").

h.     The CDO and the CHRO shall together select and retain an independent expert to assist the DEI Council in implementing the DEI Principles and preparing the DEI Report (the "DEI Expert").  The DEI Expert shall focus on assisting the DEI Council to develop and implement effective policies and practices to eliminate any underrepresentation of women or other underrepresented groups from any management positions at the Company.  In particular, the DEI Expert will help the DEI Council to:

      i.     collect and analyze data related to the DEI Principles, substantially as set out in Appendix 4;

      ii.    create policies/procedures for recruitment to attract more women of all races to management positions through a variety of external and internal recruiting and outreach methods;

      iii.    where applicable, develop transparent career paths to management (from outside or inside the organization, or both, depending on what would serve the best interests of the Company, its brand, shareholders, and employees);

      iv.    hire and promote for management positions using written, objective, job-related criteria, and eliminate to the extent possible unnecessarily subjective criteria and discretion, which facilitate the exercise of stereotyping and bias;

      v.    communicate the criteria openly in advance to candidates;

      vi.    apply the criteria consistently and evenhandedly to all candidates;

vii.    post at least internally all vacant positions at the level of Manager and below, and emphasize that people associated with underrepresented groups are encouraged to apply; and

viii.    assist the Company in adopting or developing, as appropriate, an evidence-based management training program available to all employees.

**Retention of a DEI Consultant**

29.    The Company shall retain a DEI Consultant who has been approved by the parties and by the Human Capital and Compensation Committee to assist the Committee and the Company in the development and implementation of these Measures and in overseeing their effectiveness.

a.    The DEI Consultant shall:

i.    Be an independent consultant with expertise in the area of sexual harassment in the corporate setting; and

ii.    Meet with representatives of the DEI Council at least quarterly.

b.    <u>Responsibilities & Authority</u>

i.    The DEI Consultant will have the authority to (i) review existing policies and procedures related to Subject Conduct; (ii) determine whether existing policies and procedures are effective in addressing Subject Conduct; and (iii) recommend improvements and modifications or new policies, procedures, and internal controls.

ii.    The DEI Consultant will annually evaluate the effectiveness of the Company's strategies to prevent and address Subject Conduct, including reviewing and discussing preventative measures, Complaint Data, and corrective actions with appropriate personnel; direct staff to periodically, and in different ways, test the complaint-handling system to determine if complaints are received and addressed promptly and appropriately; ensure that concerns or complaints regarding the policy, complaint system, and/or training are addressed appropriately; and partner with independent experts, as necessary, to evaluate the Company's harassment prevention strategies. To fulfill these responsibilities, the DEI Consultant shall:

1.    conduct an annual audit of the Complaint Data and the Investigations Report to assess whether complaints were adequately documented, investigated, and remediated, and assess whether outcomes are reasonably consistent across cases;

2.    review the results of the Annual Corporate Survey;

3.    investigate the potential contribution of other organizational risk factors for sexual harassment, identified by experts and researchers in the field;

4.    prepare a written report of findings from the annual audit to be presented to the Human Capital and Compensation Committee or an equivalent Board Committee; and

5.    propose recommendations to address any gaps or shortcomings based on the annual audit to the Human Capital and Compensation Committee or an equivalent Board Committee.

iii.    The Company shall make available to the DEI Consultant any information requested by the DEI Consultant in connection with reviewing and evaluating the sufficiency of the adequacy of the Company's policies, procedures, and internal controls relating to Subject Conduct.

iv.    The Company and the Board shall work in good faith with the DEI Consultant to achieve the purposes set forth above.

30.    The Company will provide notice to the stockholder plaintiffs of any decision to replace the DEI Consultant with another DEI Consultant, and the Company's selection of another DEI Consultant shall be subject to the stockholder plaintiffs' approval, which approval shall not be unreasonably withheld.

## Governance

31.    The Board of Directors shall use best efforts to implement the DEI Council's and the DEI Consultant's recommendations. To the extent the Board has an objection to any recommendation, the Board shall inform the DEI Council or the DEI Consultant of the basis for its objection, and discuss appropriately tailored modifications.

32.    Any discussion at the Board level, including any subgroups of the Board, relating to Subject Claims and interactions and communications with the DEI Council and the DEI Consultant shall be reflected in the accompanying minutes.

33.    The Human Capital and Compensation Committee or an equivalent Board Committee shall have the following responsibilities, all expressly reflected in its charter:

a.    overseeing and reviewing data relating to the handling of sexual harassment claims (i.e., the Investigations Report);

b.    reviewing "periodically (i.e., at least annually) the Company's programs, policies, and strategies relating to its culture, talent diversity, inclusion, and equal employment opportunities, including compliance with the Company's Sexual Harassment Policy and Anti-Retaliation Policy";

c. overseeing and having familiarity with the facts and circumstances surrounding "any allegation or investigation into a claim of discrimination, harassment, or retaliation (a) involving or allegedly undertaken with the authority of any of the Company's senior management (i.e., SVP or above), or (b) presenting a material risk to the business of the Company";

d. receiving an annual report from the CDO; and

e. reviewing compensation and benefits policies with reference to, among other things, i) advancement of the Company's Code of Conduct and values; ii) improvement of representation within leadership roles for underrepresented groups; and ii) creation of a strong culture of inclusion within the Company.

34. The Audit Committee's charter shall:

a. make express reference to its oversight of Ethics & Compliance;

b. call for at least quarterly reports from Ethics & Compliance; and

c. call for annual reports from the Audit Committee to the Board concerning the operations and effectiveness of the compliance function.

35. The Nominating & Governance Committee charter shall be modified to:

a. require that the Chairperson of the Company be distinct from the CEO;

b. provide for annual review of committee membership and review of committee chairs every three years;

c. provide for commitment to 50% diversity on the Board; and

d. reflect that the initial pool of candidates identified to be considered for any Board vacancy include at least one woman and at least one person of color.

<u>**Appendix 1**</u>
<u>**Principles to be Included in Sexual Harassment Policy**</u>

i.   Sexual harassment is an unlawful form of workplace discrimination that may subject the Company to legal liability, and that individual harassers may also be subject to legal liability.  But, even more importantly, sexual harassment is against the Company's policy and values.  Harassment creates lasting injury to the people who experience and witness it, undermines morale and productivity generally, and damages the Company's culture, reputation, and image.  It destroys the culture of equal respect, civility, and inclusiveness that the Company seeks to maintain.

ii.  Explain what constitutes a hostile work environment, noting that for purposes of the Code of Conduct and the standalone Sexual Harassment Policy hostile work environment is included in sexual harassment, and giving illustrative examples of actions that may create a hostile work environment.

iii. "Sexual harassment," which refers to all unwanted sexual and sex-based conduct, includes 5 key categories of misconduct:

1.   unwanted sexual advances, attention, or repeated comments;

2.   sexual coercion, which means unwanted sexual attention backed up by job-related threats or bribes;

3.   sex-based harassment, which refers to any unwanted conduct directed at an individual because of that person's sex.  Sex is defined to include sexual orientation, self-identified or perceived sex, gender identity, gender expression, or transgender status;

4.   harassment based in sex stereotyping, which occurs when an individual's conduct, personality traits or demeanor are considered inappropriate simply because they do not conform to other people's ideas about how individuals of a particular sex should look or behave.  Sex stereotyping also occurs when harassing conduct is based on assumptions about an individual's family responsibilities, such as an assumption that women are primary caregivers and fathers should not take parental leave; and

5.   harassment based on an individual's pregnancy, childbirth, or related medical conditions, including lactation.

iv.  Sexual harassment need not be severe or pervasive to be unlawful; it can be any harassing conduct that consists of more than petty slights or trivial inconveniences.  Moreover, even conduct that may seem harmless in isolation can amount to a hostile work environment when aggregated over time.

v.   Include illustrative examples that might be encountered in the Company workplace, including examples involving *quid pro quo* harassment; unwelcome sexual advances, attention, and comments; physical sexual conduct; derogatory sexualized comments; derogatory sex-based, nonsexual comments; and nonsexual actions that demean,

intimidate, ostracize, undermine, or otherwise interfere with a person's work because of their sex.

vi.    Sexual harassment need not be not explicitly sexual in motivation or content nor gendered in content—it need not consist of sexual advances or derogatory sexual commentary, or comments that women don't belong on the job.  It also includes bullying, belittling, yelling, shoving, physical assault, sabotage, ostracism, undermining, and any other unwanted conduct that is directed at an individual because of that person's sex.

vii.    Sexual harassment can occur between people of any sex or gender; between same-level employees; or different-level employees; or between employees and customers. It can be directed from a higher-level employee (such as a manager or supervisor) to a lower-level employee (such as an associate, contractor, or intern), but also from a lower-level employee toward a higher-level employee, for example, where male employees resent having to work for a female supervisor and engage in harassing conduct that undermines her authority and performance.  Customers can also direct harassing conduct at employees, and vice versa.

viii.    The policy will apply to employees, and others not traditionally defined as employees, such as applicants for employment, interns and externs (whether paid or unpaid), trainees, independent contractors, subcontractors, temporary workers, consultants, vendors, persons conducting business or providing services in the Company's workplace (and persons employed by them), regardless of immigration status.

**Appendix 2**
**Principles to be Included in Reporting Guidance**

i.   Provide a clear description of the the Company's reporting system, noting the following:

    1.   Employees may report Subject Conduct to any supervisor or manager (not only those directly above them in the chain of command), to HR, to the Legal Department, or through the Ethics Hotline.

    2.   Contractors, including models, may report Subject Conduct to any Company manager, who is required to report through one of the above channels, the photo shoot monitor, or directly through the Ethics Hotline.

    3.   The Ethics Hotline accepts anonymous complaints.

    4.   The Ethics Hotline is managed by an outside party.

ii.   Upon receipt of a complaint, the Company will undertake interim remedial measures and accommodations to ensure the complainant's safety, health, emotional well-being, and ability to work (e.g., instructing the respondent to refrain from communications with the complainant, providing counseling or paid time off to the complainant, etc.).

iii.   The reporting system will provide for a prompt, thorough, and impartial investigation of any complaint.

iv.   The Company will permit complainants and respondents to discuss the matter with investigators and provide evidence to investigators separately.

v.   The Company will permit a complainant to be accompanied at any investigatory proceeding by an individual whose role is to provide emotional support.

vi.   The Company will take prompt and proportionate corrective action if it determines that Subject Conduct has occurred.

vii.   The Company will refrain from using Subject Conduct as a pretext for disciplining employees for other reasons.

viii.   The Company will ensure that people found to have engaged in Subject Conduct are held accountable in even-handed ways, regardless of their position within the Company.

ix.   The identity of complainants, witnesses, respondents, and information obtained in any investigation will be kept confidential to the extent possible, consistent with a thorough and impartial investigation.

**Appendix 3**
**Principles to be Included in the Anti-Retaliation Policy**

i.     A clear and complete definition of "retaliation," which includes any adverse employment action that is reasonably likely to deter a person from reporting misconduct.

ii.    A statement making clear that there is an absolute prohibition on retaliation.

iii.   A statement that an employee who engages in retaliation against any individual who submits a report through any of the Company's channels for reporting or indicates they intend to do so, provides information regarding a report, or investigates a report, will be subject to discipline up to and including termination and disgorgement of compensation or cancellation of unvested options.

**Appendix 4**
**Data Collection for Implementation of DEI Principles**

i.     For each organizational entity in the Company, an organizational chart showing all positions at the level of VP or above in relation to each other, vertically and horizontally (organized by dept. or other relevant units).

ii.    For each position at the level of VP or above in each organization: a job description and job analysis (organized by department or other unit).

iii.   Based on the job analysis, a set of written objective minimal qualifications, plus any other selection criteria, for each position at the level of VP or above.

iv.    For each position at the level of VP or above, hiring and leaving data, by name and date of the person who was hired and/or left, and with any available information (including through exit interviews) about reasons for leaving.

v.     For each position at the level of VP or above, applicant data showing who applied for the job, on what date, with the complete application file retained for 5 years.  This data will be analyzed to show the number and percentage of women and men, by race and the demographic characteristics, who applied for each position in the organization annually.