# EXHIBIT 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MILTON RUDI,<br><br>        Plaintiff,<br><br>vs.<br><br>LESLIE WEXNER, EDWARD RAZEK, and DAVID T. KOLLAT,<br><br>        Defendants,<br><br>and<br><br>L BRANDS, INC.,<br><br>        Nominal Defendant. | Case No. 2:20-cv-3068<br><br>Judge Michael H. Watson<br><br>Magistrate Judge Elizabeth P. Deavers |

## DECLARATION OF LAYN R. PHILLIPS IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT OF SHAREHOLDER DERIVATIVE ACTIONS AND AN AWARD OF ATTORNEYS' FEES AND EXPENSES

I, Layn R. Phillips, declare as follows under 28 U.S.C. § 1746:

I am filing this Declaration in my capacity as the mediator in the Settling Matters.[1] As set forth herein, I submit this Declaration in support of Plaintiff's Motion for Final Approval of the Settlement and Settling Shareholders' Motion for a Fee and Expense Award.

---

[1] Settling Matters include the derivative actions filed by Milton Rudi ("Rudi" or "Plaintiff") and Nancy A. Lambrecht, Co-Trustee of the Amanda Greenfield 2012 Irrevocable Trust ("Lambrecht"), entitled *Rudi v. Wexner, et al.*, Case No. 2:20-cv-3068 (S.D. Ohio) and *Lambrecht v. Wexner, et al.*, C.A. No. 2021-0029-JTL (Del. Ch.) (the "Litigations"); and the stockholder litigation demands and books and records demands made by, the Police and Fire Retirement

1

**I.      Relevant Professional Background and Experience**

1.      I currently serve as a mediator and arbitrator with my own alternative dispute resolution company, Phillips ADR Enterprises ("PADRE"), based in Corona Del Mar, California. I am a member of the bars of Oklahoma, Texas, California, and the District of Columbia, as well as the United States Courts of Appeals for the Ninth, Tenth and Federal Circuits.

2.      I served as the United States Attorney for the Northern District of Oklahoma from 1984 to 1987. I personally tried many cases and oversaw the trials of numerous other cases as a United States Attorney and, prior to my time as a United States Attorney, as an Assistant United States Attorney in California and Florida.

3.      While serving as the United States Attorney for the Northern District of Oklahoma, I was nominated by President Reagan to serve as a District Judge for the Western District of Oklahoma, where I served from 1987 to 1991. While on the bench, I presided over more than 140 federal trials and sat by designation on the United States Court of Appeals for the Tenth Circuit. I also presided over cases in Texas, New Mexico, and Colorado.

4.      I left the federal bench in 1991 and joined Irell & Manella, where for 23 years I specialized in alternative dispute resolution, complex civil litigation, and internal investigations. In 2014, I left Irell & Manella to found PADRE. For more than 25 years, I have devoted the majority of my professional life to serving as a mediator and arbitrator in connection with large, complex cases such as the Settling Matters.

---

System of the City of Detroit ("Detroit"), Oregon Employee Retirement Fund ("Oregon"), John Giarratano ("Giarratano"), and Maryann Kualii ("Kualii").

"Settling Shareholders" means Rudi, Detroit, Oregon, Giarratano, Kualii, and Lambrecht.

5. I have successfully mediated numerous complex commercial cases involving Fortune 500 and other publicly traded companies, including more than one hundred securities class action cases and shareholder derivative cases, including derivative cases involving allegations of sexual harassment and misconduct. I have mediated hundreds of disputes referred by private parties and courts and have been appointed as Special Master by various federal courts in complex civil proceedings. I serve as a Fellow in the American College of Trial Lawyers, and I have been nationally recognized as a mediator by the Center for Public Resources Institute for Dispute Resolution ("CPR"), serving on CPR's National Panel of Distinguished Neutrals.

## II. Negotiations Resulting in the Instant Settlement

6. The mediation process in connection with the Settling Matters was hard fought on all sides. The Settlement is the product of protracted arm's-length negotiations among the Settling Shareholders on behalf of L Brands, certain current and former officers and directors of the Company, and the Special Committee of the Board of Directors of L Brands (the "Special Committee") (collectively the "Parties").

7. As described below, this mediation spanned several months and included two formal, all-day Zoom mediation sessions, as well as numerous teleconferences, working group sessions, emails and written submissions by the Settling Shareholders and the Special Committee. In addition, prior to the exchange of mediation statements and the mediation sessions, certain plaintiffs and the Special Committee made presentations which were overseen by a member of my team.

8. On April 21, 2021, the Parties and the insurers of certain individual Defendants participated in a full-day mediation session via Zoom. Prior to that mediation session, counsel for the Settling Shareholders and the Special Committee provided me with extensive briefing on the

3

then-current procedural history and factual status of their respective litigations, as well as addressing liability, damages and risk exposures supported by legal and factual analysis. The Settling Shareholders also made multiple presentations to the Defendants regarding many of the same topics. Among other things, I reviewed the mediation statements and exhibits, including the complaints filed in the Settling Matters. Members of my mediation support team attended the mediation session and assisted me in facilitating the negotiations and analyzing the legal and factual issues in the Settling Matters.

9. During the initial mediation session, the Special Committee agreed in principle to implement a set of corporate governance reforms. However, final resolution was not reached. I found the discussions engaged in by the Parties during the first mediation session to be extremely valuable in helping to understand the relative merits of each party's position and to identify the issues that were likely to serve as the primary drivers and obstacles to achieving a settlement.

10. While I am bound by confidentiality with regard to the content of the Parties' discussions and negotiations,[2] I can say that the arguments and positions asserted by the Settling Shareholders and the Special Committee during this first mediation session were the product of detailed analysis and hard work, that they were complex, and that, while professional, they were highly adversarial.

---

[2] All participants agreed that the entire mediation process was to be regarded as settlement negotiations under Rule 408 of the Federal Rules of Evidence, protecting disclosure made during such process from later discovery, dissemination, publication and/or use in evidence. By making this declaration, neither the Parties nor I waive in any way the provisions of this confidentiality agreement or the protections of Rule 408. While I cannot disclose the contents of the mediation negotiations, the Parties have authorized me to inform the Court of the procedural and substantive matters set forth herein. Thus, without in any way waiving the mediation privilege, I make this declaration based on personal knowledge.

11. Following the first mediation, I believed that efforts to settle the Settling Matters would continue to be challenging as those involved continued to hold strong and vastly divergent views as to the relevant legal and factual arguments, and that a resolution without further litigation seemed unlikely.

12. Over the course of the next two months, the Settling Shareholders and the Special Committee continued to vigorously negotiate a settlement. During this time, I or a member of my team presided over dozens of informal mediation sessions involving these Parties' working groups and the insurers.

13. In particular, the Settling Shareholders and the Special Committee spent a significant amount of time negotiating the corporate governance reforms that L Brands would adopt in exchange for the Settling Shareholders releasing their claims against the Company. These negotiations began with the proposed governance reforms drafted by the Settling Shareholders covering a wide range of issues, from measures to increase diversity in management to improved training and reporting related to sexual harassment and related misconduct. From there, subgroups of the Settling Shareholders and the Special Committee held numerous working-group sessions over a period of several weeks where the governance measures were heavily debated. These sessions were overseen by a member of my team. The Settling Shareholders and the Special Committee exchanged numerous drafts and redlines of the proposed governance reforms, sometimes multiple drafts per week. This process was highly contested, with each side vigorously advocating for its respective position.

14. On June 14, 2021, I convened a second formal mediation session via Zoom with counsel for the Parties in further attempt to negotiate a settlement. At this session, given the progress made during the earlier sessions, including the sessions regarding the governance

measures, the Settling Shareholders and the Special Committee were able to reach a settlement in principle to resolve the Settling Matters.

III. **Negotiations Resulting in the Agreed-Upon Request for Attorneys' Fees and Expenses**

15. Following the execution of the Settlement, the Settling Shareholders and the Special Committee separately mediated Settling Shareholders' Counsel's[3] attorneys' fees and expenses. At the beginning of that process, Settling Shareholders' Counsel made multiple presentations to the Special Committee and the insurers regarding the value of the results they obtained in the Settlement for the Company, and the various efforts they took to achieve those results. The Special Committee and the insurers made a presentation in response. The Parties had differing views as to what an appropriate amount of attorneys' fees should be. After considering the arguments presented by the Parties, I made a mediator's recommendation of $21,000,000 in attorneys' fee and expenses. I believe $21,000,000 is fair and reasonable considering the benefits conferred on L Brands as a result of the Settlement and is consistent with fee provisions in similar complex, large derivative actions. The Settling Shareholders and the Special Committee agreed to my recommendation and the Special Committee agreed that any attorneys' fees and expenses awarded will be paid by the Company and/or its insurance carriers. This agreement was the product of protracted arm's-length negotiations.

16. After presiding over the mediation process concerning the Settling Matters, it is my professional opinion that the Settlement, as well as the agreed-upon attorneys' fees and expenses

---

[3] Settling Shareholders' Counsel means the law firms of Bernstein Litowitz Berger & Grossmann LLP ("BLBG"), Bernstein Liebhard LLP ("Bernstein Liebhard"), Cohen Milstein Sellers & Toll PLLC ("CMST"), deLeeuw Law LLC ("deLeeuw"), Greenfield & Goodman LLC ("Greenfield & Goodman"), Quinn Emanuel Urquhart & Sullivan LLP ("Quinn Emanuel"), Scott+Scott Attorneys at Law LLP ("Scott+Scott"), Smith, Katzenstein & Jenkins LLP ("SKJ"), and any other law firm that appeared for or represents any of the Settling Shareholders in the Settling Matters.

for Settling Shareholders' Counsel are fair and reasonable and are the product of vigorous and independent advocacy and of arm's-length negotiations conducted in good faith by the Parties.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 13th, 2021, at Corona del Mar, California.

_____
LAYN R. PHILLIPS
Former U.S. District Judge