# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

Milton Rudi,

    Plaintiff,

    v.

Leslie H. Wexner, *et al.*,

    Defendants.

Case No. 2:20-cv-3068

Judge Michael H. Watson

Magistrate Judge Deavers

## OPINION AND ORDER

Plaintiff Milton Rudi on behalf of himself and the Police and Fire Retirement System of the City of Detroit ("Detroit"), Oregon Public Employee Retirement Fund ("Oregon"), John Giarratano ("Giarratano"), Maryann Kualii ("Kualii"), and Nancy A. Lambrecht, Co-Trustee of the Amanda Greenfield 2012 Irrevocable Trust ("Lambrecht") (collectively, the "Settling Shareholders") move for an order granting final approval of a derivative litigation settlement ("Settlement")[1] with Defendants Leslie H. Wexner, Edward Razek, David T. Kollat, (collectively "Individual Defendants"), and L Brands, Inc. ("L Brands," collectively "Defendants"). ECF No. 25. Settling Shareholders also move for an award of attorney's fees and expenses. ECF No. 26. Both motions are

---

[1] The Settlement is memorialized between the parties in a Stipulation and Agreement of Settlement dated July 29, 2021. ECF No. 21-1.

unopposed. For the following reasons, Settling Shareholders' motions are **GRANTED**.

## I. BACKGROUND

The background of this case is laid out in great detail in the unopposed motion for final approval, ECF No. 25, and does not need to be repeated in-depth in this Opinion except as necessary to analyze the reasonableness of the Settlement. As a high-level overview, Settling Shareholders alleged that Defendants tolerated "pervasive and systematic sexual harassment" at L Brand's subsidiary, Victoria's Secret, which led to the company's reputational and financial losses. Mot. 2–3, ECF No. 25. After internal investigations and the filing of multiple lawsuits, the parties agreed on the Settlement. See ECF No. 21-1. On August 5, 2021, the Court preliminarily approved the Settlement. ECF No. 24. On January 18, 2022, the Court held a fairness hearing. The Court now considers whether to grant final approval of the Settlement.

### A. The Proposed Settlement

The Settlement requires L Brands to implement the following corporate governance reforms:

- New stand-alone policies against sexual harassment and retaliation, for reporting of harassment and discrimination, and for investigation of harassment and discrimination complaints;

- Strengthen the process for reporting and investigating claims of sexual harassment, gender discrimination, and retaliation;

- Improved training for management and employees, including bystander training;

- The creation and maintenance of a Diversity, Equity and Inclusion ("DEI") Council to oversee the reforms;

- Retaining a DEI expert and consultant to advise the DEI Council and conduct thorough reviews of policies and procedures, and audits to ensure that these policies and procedures are effective;

- Adopting a set of DEI Principles to foster a diverse and inclusive workplace culture;

- Collecting and evaluating data relating to harassment, retaliation, and the DEI Principles; and

- Bringing L Brands' policy on non-disclosure agreements into conformity with New York law, ending the use of mandatory arbitration provisions for disputes involving harassment, gender discrimination, and retaliation, and agreeing not to enforce pre-Settlement non-disclosure provisions that prohibit a complainant from discussing the underlying facts and circumstances of a sexual harassment claim.

Mot. 5–6, ECF No. 25. Settling Shareholders represent that these reforms will significantly increase shareholder value, "likely in excess of $100 million." Mot. 10, ECF No. 25.

**B.   Notice**

Settling Shareholders submitted a joint declaration from counsel, in which counsel declared that the parties complied with the notice provisions of the Preliminary Approval Order by:

(a) Announcing the Settlement via a Form 8-K and a press release on July 30, 2021; and

(b) Filing notice of the Settlement via a Form 8-K with the United States Securities and Exchange Commission on September 8, 2021.

See Joint Decl. ¶ 32, ECF No. 25-2. The Court finds that there was sufficient notice provided to shareholders pursuant to Federal Rule of Civil Procedure 23.1.

## II. APPROVAL OF THE PROPOSED SETTLEMENT

This derivative action may be settled only with the Court's approval. Fed. R. Civ. P. 23.1(c). The Court "enjoys wide discretion in evaluating the settlement of derivative actions under Rule 23.1." *McDannold v. Star Bank, N.A.*, 261 F.3d 478, 488 (6th Cir. 2001) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992)). "Settlements are welcome" in derivative actions and, "[a]bsent evidence of fraud or collusion, such settlements are not to be trifled with." *Granada*, 962 F.2d at 1205 (citations omitted). Relevant factors in evaluating the settlement "include the likelihood of success on the merits, the risk associated with the expense and complexity of litigation, and the objections raised by class members." *Id.* (citations omitted). At times, courts also consider the other Rule 23(e) factors in determining whether a derivative action settlement should be approved. *See In re Big Lots, Inc. S'holder Litig.*, No. 2:12-CV-445, 2018 WL 11356561, at *2 (S.D. Ohio Aug. 28, 2018) ("This Court has, on at least one occasion, also considered the other Rule 23(e) factors in determining whether a derivative action settlement should be approved." (citation omitted)). Based on these factors, the Court determines that the Settlement is fair, reasonable, and adequate.

### A.  Likelihood of Success on the Merits

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011) (quoting *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)).

Both in the motion for final approval and at the fairness hearing, Settling Shareholders asserted that they faced significant risks to successfully prosecuting their claims, including defeating likely-to-be-filed dispositive motions. Mot. 16–17, ECF No. 25. Settling Shareholders point to three obstacles they would have faced without the Settlement. *Id.* First, they would have had to establish that the L Brands board could not objectively consider a litigation demand; second, they would have had to establish liability on the notoriously difficult-to-win *Caremark* claim; and third, any success Settling Shareholders managed to achieve would come only after protracted litigation. *Id.* So, the likelihood of success for Settling Shareholders was far from assured, and this factor weighs in favor of approving the Settlement.

### B.  Complexity, Expense, and Likely Duration of the Litigation

As the Sixth Circuit has noted, derivative actions are "notoriously difficult and unpredictable." *Granada*, 962 F.2d at 1205 (quoting *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983)). "[A]voiding the delay, risks, and costs of

continued litigation against a defendant is a valid reason for counsel to recommend and for the court to approve a settlement." *In re Big Lots, Inc. S'holder Litig.*, 2018 WL 11356561, at *3. (internal quotation marks and citation omitted).

Absent settlement, continued litigation of this case would likely take years and result in the parties incurring significant expense. There are complex issues of law that would need to be briefed and decided, and, assuming some claims survived a motion to dismiss, the parties would have to engage in significant discovery, briefing for summary judgment, and possible trial and appeals. Additionally, the parties are represented by very sophisticated counsel that would undoubtedly vigorously prosecute and defend the claims in this case. This supports settlement.

### C. Objections Raised by Shareholders

After having provided sufficient notice, no shareholder objected to the settlement. This is strong evidence that shareholders believe the settlement to be fair, reasonable, and adequate.

### D. The Amount of Discovery Engaged in by the Parties

To confirm that Settling Shareholders "have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement," the Court considers the amount of discovery engaged in by the parties. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006). "In considering whether there has been sufficient discovery to permit the

plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *UAW v. Gen'l Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *19 (E.D. Mich. Mar. 31, 2006). In this consideration, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Id.*

Here, Settling Shareholders conducted "comprehensive investigations," both independently and in conjunction with L Brands' Special Committee. Mot. 18, ECF No. 25. Settling Shareholders were able to review non-public documents, as well as numerous versions of the L Brands' code of conduct, anti-harassment, discrimination, and retaliation policies, reporting and investigations protocols, model photoshoot protocols, Board and Committee minutes and presentations (including presentations regarding complaints received), Special Committee minutes, severance and settlement agreements, and internal complaints. *Id.* There has been no indication that Settling Shareholders lacked information necessary to assess the strength of their case, which supports approval of the Settlement.

### E. Arm's-Length Negotiation

The Court finds that there is no evidence—or even a suggestion—that the Settlement was the product of fraud or collusion. "Absent evidence to the

contrary, courts presume the absence of fraud or collusion." *In re Wendy's Co. S'holder Derivative Action*, No. 1:16-CV-1153, 2020 WL 13169460, at *7 (S.D. Ohio Jan. 24, 2020) (discussing preliminary approval of a settlement); *see also IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006) (noting, on a motion for final approval of a class action settlement, that "Courts presume the absence of fraud or collusion unless there is evidence to the contrary"). The Settlement is the result of numerous meetings, presentations, and two separate mediations with a retired federal district court judge as mediator. This favors approving the Settlement.

## F.     The Opinion of Counsel

The Court gives significant weight to the opinions of Settling Shareholders' counsel, who have indicated that the Settlement is fair, reasonable, and adequate. *See* Joint Decl., ECF No. 25-2; *see also, e.g.*, *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs . . . . [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered."). L brands, through the Special Committee, agrees that the Settlement "confers a substantial benefit on L Brands and its shareholders." Mot. 19, ECF No. 25.

In this case, counsel have extensive experience in complex shareholder derivative and class action litigation and corporate matters. *See* Joint Decl. ¶¶ 71–73, ECF No. 25-2; ECF No. 26-2–26-9 (explaining the years of experience

and background of counsel). After significant discovery and protracted arm's-length negotiations, the parties reached the Settlement. Equipped with extensive experience, counsel have concluded that the Settlement is a good result for the parties.[2] The Court therefore finds that this factor favors approval of the Settlement.

After considering the relevant factors, the Court **APPROVES** the Settlement.

## III.   ATTORNEY'S FEES AND COSTS; EXPENSES; SERVICE AWARDS

Settling Shareholders move for attorney's fees and costs, expenses, and service awards. ECF No. 26. The Court considers each request, in turn.

### A.   Attorney's fees

Settling Shareholders move for an award of attorney's fees and costs. ECF No. 26. Defendants do not oppose. To assess the reasonableness of the fee request, the Court first determines the method Settling Shareholders' counsel used to calculate the fee. In this case, Settling Shareholders are seeking a percentage of the fund award. Specifically, Settling Shareholders' counsel seeks $21 million in fees, which represents 21% of the $100 million projected increase in shareholder value as a result of the Settlement. Fee Mot. 2, ECF No. 26.

---

[2] Further, the Oregon Attorney General appointed Special Counsel to investigate the allegations in this case and potentially file another complaint on its behalf. The Special Counsel appeared at the Fairness Hearing and represented that the State of Oregon agrees with this Settlement.

Next, the Court must analyze the factors laid out in *Ramey v. Cincinnati Enquirer, Inc.*, which include:

> 1) the value of the benefit rendered to the corporation or its stockholders, 2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, 3) whether the services were undertaken on a contingent fee basis, 4) the value of the services on an hourly basis, 5) the complexity of the litigation, and 6) the professional skill and standing of counsel involved on both sides.

508 F.2d 1188, 1196 (6th Cir. 1974). Each of these factors favors approving the requested attorney fee award.

First, the Court finds that the Settlement confers a substantial benefit on Settling Shareholders. As described both in the motion for final approval of the Settlement and at the fairness hearing, the corporate governance reforms that are included in the Settlement will be meaningful in preventing any future misconduct by L Brands' officers and directors and are estimated to produce a $100 million increase in shareholder value.

Second, society's stake in rewarding attorneys who produce demonstrable benefits supports an award of the requested attorney's fees. It is certainly in society's interest to have fiduciary laws and regulations enforced. If experienced counsel, such as the attorneys who represented Settling Shareholders here, were unwilling to take on derivative action lawsuits for fear of not being compensated, it would be more difficult to enforce accountability for officers and directors.

Third, Settling Shareholders' counsel agreed to undertake this case on a wholly contingent basis. See Fee Mot. 16, ECF No. 26. In doing so, Settling Shareholders' counsel assumed a real risk by expending time, effort, and money with no guarantee of recovery. This factor weighs in favor of approving the requested fee award.

The Court next considers whether the fourth factor, the value of the services on an hourly basis, favors the proposed fee award. A cross-check using Settling Shareholders' counsel's lodestar weighs in favor of granting the requested fee award. Settling Shareholders' counsel has provided evidence that they incurred a total lodestar of $7,528,264.25 in attorney's fees. See Joint Decl. ¶ 64. The Court has reviewed the declarations of Settling Shareholders' counsel and finds the blended rate charged and hours incurred to be reasonable based on the location and experience of counsel. Therefore, the requested lodestar multiplier with respect to fees is approximately 2.75. Because of the inherent risks of litigation, courts in this district award multipliers of "between approximately 2.0 and 5.0." See Koenig v. USA Hockey, Inc., No. 2:09-CV-1097, 2012 WL 12926023, at *10 (S.D. Ohio Jan. 10, 2012). The 2.75 multiplier falls at the low end of that reasonable range. See Dillow v. Home Care Network, Inc., No. 1:16-cv-612, 2018 WL 4776977, at *7 (S.D. Ohio Oct. 3, 2018) (finding a 2.9 multiplier appropriate); see also Lowther v. AK Steel Corp., No. 1:11-cv-877, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving 3.06 multiplier and citing cases with multipliers ranging from 4.3 to 8.5)). The

Court finds that Settling Shareholders' counsel's hourly rates are reasonable under the circumstances of this particular case. Accordingly, this factor weighs in favor of granting the requested fee.

The remaining two factors, the complexity of the litigation and the professional skill and standing of the attorneys involved, have been discussed above and also support approving the attorney's fee request.

For all of these reasons, Settling Shareholders' counsel's request for $21 million in attorney's fees is reasonable.

### B. Expenses

> Under the common fund doctrine . . . counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs in the prosecution of claims, and in obtaining settlement, including but not limited to expenses incurred in connection with document productions, consulting with and deposing experts, travel and other litigation-related expenses.

*In re Big Lots, Inc. S'holder Litig.*, 2018 WL 11356561, at *6 (internal quotation marks and citation omitted).

Settling Shareholders' counsel has provided documentation to support $311,884.21 in expenses in prosecuting this action. These expenses include, among other things, mail costs, meals, transportation, legal research, copying costs, telephone expenses, and court filing fees. *See, e.g.*, Scott Decl. ¶ 15, ECF No. 26-2; Reiser Decl. ¶ 15, ECF No. 26-5. These types of expenses are reasonable and necessary, and, therefore, the Court approves the request of $311,884.21 for litigation expenses. *See Rikos v. Proctor & Gamble Co.*, No.

1:11-CV-226, 2018 WL 2009681, at *10 (S.D. Ohio Apr. 30, 2018) (approving similar types of expenses totalling over $360,000).

**C.     Service Awards**

Service "awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (reviewing such awards under an abuse of discretion standard). Notably, "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dilworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (internal quotation marks and citations omitted). Federal district courts also approve service awards in shareholder derivative actions. *See, e.g.*, *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 534 (N.D. Cal. 2020), *aff'd*, 845 F. App'x 563 (9th Cir. 2021) (finding $25,000 incentive awards "justified and reasonable" in a shareholder derivative action); *In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d 277, 285 (S.D.N.Y. 2015) (approving $2,500 service awards in a shareholder derivative case).

Here, some counsel propose an award of $10,000 to certain Settling Shareholders as an incentive for bringing and pursuing this action on behalf of all shareholders. ECF No. 26. This request is reasonable when compared with other awards in this district. *See, e.g.*, *Rotondo v. JPMorgan Chase Bank, N.A.*,

No. 2:19-cv-2328, 2019 WL 6167086, at *8–9 (S.D. Ohio Nov. 20, 2019), *report and recommendation adopted*, 2019 WL 6496806 (S.D. Ohio Dec. 2, 2019) (approving $20,000 service awards); *Owner-Operator Indep. Drivers Ass'n, Inc. v. Arctic Express, Inc.*, No. 97-cv-750, 2016 WL 5122565, at *7 (S.D. Ohio Sept. 21, 2016) ($25,000); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 251 (S.D. Ohio 1991) ($50,000). In light of their service, and the substantial benefit provided, the Court approves service awards of $10,000 to Settling Shareholders Rudi, Detroit, Lambrecht, and Giarratano.

## IV. CONCLUSION

For these reasons, the Court **GRANTS** the unopposed motion for final approval of the settlement, ECF No. 25, **GRANTS** the unopposed motion for an award of attorney's fees and expenses, ECF No. 26, and **ORDERS** as follows:

1. The Settlement is a fair, reasonable, and adequate resolution to this case for all parties, and is finally approved;

2. To the extent not already done, the parties are **ORDERED** to perform under the terms of the Settlement;

3. Settling Shareholders' counsel are awarded $21,000,000 in attorney's fees and $311,884.21 in expenses, which shall be paid to lead counsel for distribution in accordance with the Settlement;

4. Settling Shareholders Rudi, Detroit, Lambrecht, and Giarratano are each awarded $10,000 in service awards.

5.  The Court retains jurisdiction over this matter for purposes of enforcing the Settlement;

6.  This action is **DISMISSED WITH PREJUDICE**, with each party to bear its own costs, except as described above.  The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** and close the case.

**IT IS SO ORDERED.**

*Michael H. Watson*
**MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT**